## 19701.   HARDIN *v.* ROSENTHAL *et al.*

WYATT, Presiding Justice.   James R. Hardin filed his petition in equity, alleging in substance that he owned ten percent of the stock in South Bend Liquor Store, Inc.; that Petty Bregman and Jacob Rosenthal owned forty-five percent each of said stock; that there was a binding agreement between the parties which was incorporated in the stock certificates, to the effect that neither would sell to a third person without giving to the other stockholders an option to buy the stock; that, in violation of this agreement, Bregman had entered into an agreement to sell his stock to Rosenthal without giving to the petitioner an opportunity to buy the stock; that the proposed sale by Bregman to Rosenthal was a subterfuge under which the stock was to be transferred by Rosenthal to some third person unknown to the petitioner; that Bregman had refused to carry out this agreement, and Rosenthal had filed suit for specific performance against Bregman, which had resulted in a verdict in favor of Rosenthal, which verdict and judgment had been affirmed by the Supreme Court of Georgia; that the petitioner knew that the suit was pending in the courts, but made no effort to intervene because Bregman represented to him that no agreement to sell the stock had been made, and he did not know who would prevail in the suit.   By amendment, it was alleged that James Bernstein was the party to whom the stock was to be eventually transferred.   Bernstein was duly made a party.   The prayers of the petition were in substance that the defendant be enjoined from transferring the shares of stock to anyone except the petitioner; that the alleged agreements be declared null and void; that the defendants be enjoined from holding any stockholders' meetings or from changing the status of the stock or the business operation of the corporation; that the alleged restrictive agreement with reference to the sale of the stock be specifically performed; and that the petitioner be granted general relief.   The trial court sustained a general demurrer and dismissed the petition.   The exception here is to that judgment.   *Held:*

The general demurrer presents the following questions: 1. Does the petition show on its face that the petitioner has an adequate remedy at law?   2.   Is petitioner estopped by his conduct?   3.   Is the restrictive agreement relied upon so in-

definite that specific performance can not be decreed? Since all the relief prayed is dependent upon the prayer for specific performance, we consider that question first. In the view we take of this case, it is unnecessary to decide the question of whether or not the facts alleged are sufficient to remove the case from the general rule that specific performance of a contract for the sale of personal property can not be decreed in a court of equity. But, on that general question, see *Rimes* v. *Rimes,* 152 *Ga.* 721 (111 S. E. 34, 22 A. L. R. 1030). "Equity will not decree the specific performance of a contract where the terms thereof are not definite and certain." *Harris* v. *Trippi,* 209 *Ga.* 369 (2) (72 S. E. 2d 704). This rule of law is so well established by this court that the citation of authority seems unnecessary. See, however, on this question, *O'Rear* v. *Lamb,* 194 *Ga.* 455 (22 S. E. 2d 74), and *Jenkins* v. *Evans,* 202 *Ga.* 423 (43 S. E. 2d 501). The restrictive agreement relied upon in this case reads as follows: "In the event the holder of this stock certificate shall desire to sell same, he shall first offer this certificate for sale at market value or true value to the other stockholders of record in said corporation and shall give an option to said stockholders of not less than six months in which to exercise such option to purchase this certificate. This option may be waived in writing. It is further resolved that the above restriction shall be imprinted by typewriter on all the stock certificates issued by this corporation." At what price does this agreement provide that the stock shall be offered to the stockholders? The only criterion the agreement furnishes is "at market value or true value." Are "market value" and "true value" one and the same thing? Because of the fact that both terms are used in the agreement, it would seem that the parties did not so construe the two terms. What is the "market value" of this stock? It does not appear that the stock is listed on any stock exchange or otherwise has any fixed market value. The petitioner attempts to fix no market value other than to allege that the petitioner had offered a stated sum for the stock. That might or might not be the true or market value. What portion of the stock offered by one of the stockholders for sale shall be offered to each of the remaining stockholders? The agreement is entirely silent on this matter. If the stock is offered at a price satisfactory to the remaining stockholders, how is it

to be paid for—cash or credit? The restrictive agreement relied upon in this case appears to be entirely too indefinite to be specifically performed in a court of equity. It therefore becomes unnecessary to pass upon the other questions presented. In view of what has been said above, it was not error to sustain the general demurrer and dismiss the petition.

Since the case is being affirmed, the motion to dismiss will not be considered.

*Judgment affirmed. All the Justices concur, except Duckworth, C. J., who dissents.*

SUBMITTED MAY 15, 1957—DECIDED JUNE 11, 1957.

*Marvin O'Neal, Jr.,* for plaintiff in error.

*Samuel L. Eplan, Sidney Haskins, Smith, Kilpatrick, Cody, Rogers & McClatchey, James M. Roberts,* contra.