52226. AUSTIN et al. v. BENEFIELD et al.

STOLZ, Judge.

This class action was brought on behalf of teachers employed by the Gwinnett County School System based on certain teacher employment contracts entered into before July 3, 1975. Every teacher employed by the defendants for the 1975—1976 academic year signed a standard form employment contract, which contained a stated salary figure. The contract provided, however, that the specified salary was "subject to adjustment according to the Georgia 'Minimum Foundation Program Of Education,' . . . without obligation by the employer to make up any deficit . . ." It also stated, "The terms and conditions of this contract are made expressly subject to provisions of the Constitution and the laws of the State of Georgia relating to public education and the appropriations therefor." In order to persuade contracting teachers not to breach the contract unnecessarily, the contract also provided that in case the teacher breached the contract for reasons other than emergency, "the employer shall recommend to the State Board of Education that the certification of the teacher be suspended in accordance with policies of the State Board of Education and the rules of the Professional Practices Commission."

The plaintiffs brought this action in two counts. Count 1 asserts that the defendants breached the contracts of employment entered into with their teachers. Count 2 sought a declaration that the legislative action in repealing the appropriations for teacher salary raises, which action caused the defendants' breach, constituted the passage of a law impairing the obligation of contracts.

The dispute in this case is a direct result of the actions of the Georgia General Assembly in first granting, and then revoking, appropriations for a statewide teacher salary increase. The chronology of events leading to this

lawsuit is, briefly, as follows.

During the regular session of the General Assembly, commencing in January 1975, the General Appropriations Act for the fiscal year beginning July 1, 1975, was passed. Section 44A of that Act appropriated the sum of $29,972,562 to the Georgia Department of Education to fund a seven percent increase in the statewide minimum teachers salary index. This index states the minimum salary a local school system must pay any teacher, and is dependent upon the number of years of service and type of certificate held by the teacher. Local school districts may supplement the minimum salary, as did the Gwinnett County School District. This index is also the basis upon which state funds are transmitted to local districts for payment of teacher salaries. Each school district in Georgia receives funds from the state to operate its schools, and is required to also contribute a certain amount of local funds from local property taxes. The amount of state funds received is determined in large measure by the state minimum index and the number of teachers allocated by law to the system.

After passage of the General Appropriations Act, the state board established its index for the 1975-1976 year. The Gwinnett County School District then entered into written contracts with its teachers, each contract containing a stated salary which included Gwinnett's annual local supplement.

The trouble began, however, when on June 18, 1975, the Governor announced that decreasing state revenue estimates necessitated a special session of the legislature to trim the budget. That session concluded on July 3, 1975, with the enactment and signing by the governor of "House Bill No. 1-Ex, Executive Act No. 4," which amended the General Appropriations Act. One of the principal amendments was the repeal of Section 44A of the General Appropriations Act, which had provided funding for the increase in the state teachers index, as well as pay raises for other state employees, including professors in the state university system.

As a result of the repeal, the State Board of Education rescinded its published state index for the 1975-1976 year, and reverted to the same scale used the previous

year. Thereafter, the defendants announced that they would not be able to pay the exact amount specified in the contracts and would have to reduce each teacher's salary by the amount of the reduction in the state index. The only reason for the defendants' refusal to honor the original contractual terms was the loss of state funds resulting from the legislature's repeal of § 44A.

On August 7, 1975, this class action was filed on behalf of the teachers in Gwinnett County seeking judicial enforcement of the contracts signed prior to the repeal of the state appropriations. On that same day, an action was filed on behalf of all university professors who had similar contracts with the Board of Regents. The professors' claims for relief were upheld by the Supreme Court of Georgia on December 4, 1975. *Busbee v. Ga. Conference, American Assn. of University Professors,* 235 Ga. 752 (221 SE2d 437).

In his order entered February 23, 1976, Judge Charles C. Pittard of the Superior Court of Gwinnett County denied the plaintiffs' claims on the contract (Count 1) and entered judgment for the defendants. The trial judge made no ruling on Count 2 of the plaintiffs' complaint.

1. The instant case is materially different from the university professors case in that the professors' contracts had no provision for reduction in case of the unavailability of state funds. "Considering the merits," the Supreme Court said, "we note initially that the faculty contract forms do not contain a provision to the effect that the payments provided for therein are subject to reduction depending upon the availability of funds as provided by the appropriations Act and amendments thereto . . . The state can protect itself against reoccurrence [sic] of this situation in the future by contract, or by statute if that be deemed appropriate." *Busbee,* supra, 235 Ga. 760, 762.

The Gwinnett County teacher contract, on the other hand, did provide for reduction in case of the unavailability of state funds. The contract stated, "The terms and conditions of this contract are made expressly subject to provisions of the Constitution and the laws of the State of Georgia relating to public education and the

appropriations therefor." The plaintiffs argued that this clause referred to appropriations authorized as of the date of the contract only, and accordingly that the school teachers' contract, like the professors' contract, had no provision for reduction based on lack of appropriations.

In this case the plaintiffs' contention is without merit, however. If the clause in question referred only to appropriations in existence at the time the contract was made, then it is useless, since the laws and appropriations in existence then would automatically be part of the contract. Therefore, if the provision in question is to be more than a useless redundancy, it must refer to appropriations authorized at the time of payment. It seems unreasonable to believe that the terms of the contract would be conditioned on a fact already in existence when the contract was made.

2. There is one equitable consideration in the contract that weighs heavily in the plaintiffs' favor. We refer to that portion of the contract which provides that in case the teacher breached the contract for reasons other than emergency, "the employer shall recommend to the State Board of Education that the certification of the teacher be suspended in accordance with policies of the State Board of Education and the rules of the Professional Practices Commission." Thus what would happen if, in this or a similar situation, a teacher sought and obtained other teaching employment which paid more than the reduced compensation to be received under the contract? Would the teacher suffer certification suspension and thus be effectively banned from his or her trained profession? Such a result is unconscionable.

It has long been held that an onerous contractual provision in restraint of a person's trade or profession is illegal and can not be enforced. Code Ann. § 20-504 (Ga. L. 1970, p. 441); *Rakestraw v. Lanier,* 104 Ga. 188 (30 SE 735, 69 ASR 154). If the contract is severable, however, as is the one here involved, the invalid provision does not render other provisions of the contract void. Code Ann. § § 20-112, 20-501; *Orkin Exterminating Co. v. Gill,* 222 Ga. 760 (152 SE2d 411); *Mansfield v. B. & W. Gas, Inc.,* 222 Ga. 259 (149 SE2d 482);*Scott v. Hall,* 56 Ga. App. 467 (192 SE 920); *Roberts v. H. C. Whitmer Co.,* 46 Ga. App. 839

(169 SE 385).

In *Busbee v. Ga. Conference, American Assn. of University Professors,* supra, the Supreme Court stated, "[t]he state can protect itself against reoccurrence [sic] of this situation in the future by contract. . ." We are persuaded by this language that our highest court does not disapprove provisions in teacher contracts authorizing salary reductions under the circumstances presented in this case. Furthermore, the contract's restraint-of-profession provision is not before us in this case in that there has been no action or threat of action by the defendants to suspend any teacher's certificates.

The plaintiffs argue that Carlson v. School District No. 6 of Maricopa County, 12 Ariz. App. 179 (468 P2d 944), is dispositive of the instant case. In Carlson, when it became apparent that the school district would not be able to pay the teachers' contracted salaries, a six percent pay cut was announced. The school district claimed authority to effect this cut in salary under Ariz. Rev. Stat. § 15-257 (1956), a section of the Teacher's Tenure Act, which read in part, "Nothing in this article shall be interpreted to prevent a school board from reducing salaries or eliminating teachers in a school district in order to effectuate economies in the operation of the district or to improve the efficient conduct and administration of the schools of the district, but no reduction in the salary of a continuing teacher shall be made except in accordance with a general salary reduction in the school district by which he is employed, and in such case the reduction shall be applied equitably among all such teachers." The court held that this provision restricted the power of school districts, allowing them to make non-discriminatory salary cuts for budgetary purposes after a teacher's contract has expired. The Arizona court felt that the statute did not allow a unilateral pay cut and thus that the defendant school district had breached its contracts with the teachers involved.

The court in Carlson went on to note that Ariz. Rev. Stat. § 15-258 provided for revocation of a teacher's certificate upon breach of contract by the teacher. The court said, "In view of such stringent sanctions against the breach of a contract by one party, we cannot believe

that the law will permit breach by the other party in its discretion as a policy-making body for the district . . ." 468 P2d 950. This statement, upon which the plaintiffs rely, not only was mere obiter dictum, but also was predicated on the fact that the school district had breached its contracts. In the instant case for the reasons previously set forth we do not believe that there has been a breach of the contract by the Gwinnett County Board of Education.

3. The plaintiffs also alleged that the repeal of Section 44A of the "General Appropriations Act" constituted a law impairing the obligation of contracts in violation of Art. I, Sec. III, Par. II of the Georgia Constitution (Code Ann. § 2-302). The plaintiffs' allegation is without merit, however, since the legislative actions involved did not, as discussed above, result in a breach of contract. The contractual salary obligation itself was expressly conditioned upon changes in the state minimum teacher salary index due to "increases or decreases in appropriations."

*Judgment affirmed. Bell, C. J., and Clark, J., concur.*

ARGUED JUNE 7, 1976 — DECIDED SEPTEMBER 27, 1976 — REHEARING DENIED OCTOBER 22, 1976 — 

*Haas, Holland, Levison & Gibert, Theodore G. Frankel, David L. Ross,* for appellants.

*Webb, Fowler & Tanner, Jones Webb, J. L. Edmondson,* for appellees.