37015. HORNE et al. v. DRACHMAN.
37127. DRACHMAN et al. v. HORNE et al.

SMITH, Justice.

After appellee Drachman was removed from the Board of Directors and terminated as an employee of appellant Superior Rigging and Erecting Company, he brought this action against Superior and Horne, Superior's President and majority stockholder. Drachman, who sued both individually and in his capacity as a minority stockholder, sought the following relief: liquidation of Superior, specific performance of stock repurchase provisions in his contract with appellants, an accounting from Horne to Superior for assets he diverted, and actual and punitive damages against Horne. Before trial, the court granted partial summary judgment for appellants as to liquidation and several other matters. A jury trial was held on the remaining issues, and the jury was instructed to return a special verdict by answering ten specific questions. In accordance with these answers, the court ordered specific performance of the stock repurchase agreement at a price of $53,000.00 per share, and awarded Drachman $6,000.00 actual damages and $175,000.00 punitive damages. Appellants filed a motion for new trial. The trial court granted the motion solely on the issue of punitive damages for the reason that "$175,000.00 is vastly greater . . . than other awards approved by our appellate courts."

Appellants appeal from the judgment requiring specific performance of the repurchase agreement and awarding damages to appellee. Appellee cross-appeals from the jury determination that the price of his stock is $53,000.00 per share and from the award of a new trial on the punitive damages issue. We affirm on condition;

otherwise reversed.

1. Appellee's contract with appellants provides for the repurchase of a stockholder's shares upon termination of employment. The pertinent provisions are as follows: "12. *Termination of Employment.* Notwithstanding anything or any provision in this Agreement, the Corporation shall have the right at any time, to terminate the employment of any of the Stockholders and any Stockholder shall have the right at any time to terminate his employment with the Corporation. In the event of termination of employment for any reason, the terminating Stockholder shall sell to the Corporation and the Corporation shall purchase from the terminating Stockholder, all of the shares of Stock owned by him, . . . at the Purchase Price as set forth in paragraph 9, and payment therefor shall be made as provided for Purchase Payment in paragraph (3) of paragraph 1.

"9. *Purchase Price.* The Purchase Price shall be $12,000.00 per share of Stock, and shall first be used to discharge any lien or encumbrance upon the Stock being purchased. Approximately 12 months from the date of this Agreement, and each 12 months thereafter, the parties hereto will revise the Purchase Price to conform to changing conditions, and such Purchase Price shall remain valid until further revised or until 12 months shall have passed, whichever is earlier, and if there has been no revised Purchase Price within 13 months of a date when the Purchase Price is to be set, then the Certified Public Accountant or Certified Public Accounting Firm who or which, at the date of setting the Purchase Price, is then the Auditor of the books of the Corporation, shall revise the Purchase Price last set by Agreement up or down so as to reflect the changed conditions thereafter." In their first enumeration of error, appellants contend these provisions are unenforceable. They advance three arguments. None is meritorious.

a) First, appellants contend the agreement is fatally defective because it lacks a specific purchase price. We cannot agree.

The buy-out agreement is not rendered legally unenforceable merely because it contemplates a variation in purchase price. "In order to induce desired individuals into [remaining with a] closely held corporation . . ., the [repurchase] price must be attractive . . . While a precise method of evaluating the stock might be desirable, [repurchase] agreements often allow a lot of leeway." 12 Fletcher, Cyclopedia of Corporations 232, § 5461.8 (Perm. Ed. 1971). A periodic redetermination of a share's value is necessary to provide a fair purchase price to the individual whose employment has been terminated. See *Drennon Food Products v. Drennon,* 104 Ga. App. 19 (120 SE2d 902) (1961). Accord, McTeague v. Treibits, 388 S2d 309

(Fla. App. 1980); 18 AmJur2d 837, Corporations, § 316. See generally *Murrey v. Specialty Underwriters, Inc.,* 233 Ga. 804 (213 SE2d 668) (1975). Cf. *Hardin v. Rosenthal,* 213 Ga. 319 (98 SE2d 901) (1957) where no provision was made for arriving at the stock's value.

b) Next, appellants assert the provision requiring Superior's auditor to revise the purchase price of the stock (in the event it has not been otherwise revised) was a condition precedent to the corporation's duty to perform which has not occurred. We cannot seriously consider the argument that this clause was intended to make appellants' obligation conditional. Under the agreement, the corporate auditor is required to revise the price if the parties fail to do so; the auditor performs on the parties' behalf. The contract does not speak in terms of condition precedent, nor can such a characterization fairly be implied.

Under the terms of the agreement, the auditor's revision constitutes a promise of performance conditioned upon certain events. 17 AmJur2d 749, Contracts, § 320. " 'Where the language is unambiguous and but one reasonable construction of the contract is possible, the court must expound it as made.' *Cato v. Aetna Life Ins. Co.,* 164 Ga. 392, 398 (138 SE 787) (1927)." *Kushner v. Southern Adventist Health &c. System,* 151 Ga. App. 425, 427 (260 SE2d 381) (1979).

c) Finally, appellants contend the contract is unenforceable due to lack of "mutuality." We disagree.

The directors and officers of the corporation were under a duty to act in good faith. See Code Ann. § 22-713; see also *Comolli v. Comolli,* 241 Ga. 471 (246 SE2d 278) (1978). Because of this good faith obligation, the fact that the auditor may be called upon to set the price does not create "such indefiniteness or uncertainty as will prevent the agreement from being an enforceable contract." Corbin on Contracts, 424, §97. See 12A Fletcher, supra, § 5617; 17 AmJur2d 786, Contracts, § 350. See generally, Collins v. Universal Parts Co., 260 S2d 702 (La. App. 1972); Bank of California v. First Mtg. Co., 495 P2d 1057 (Wash. App. 1972).

2. In their second enumeration, appellants contend that the parties' contract is unenforceable because a covenant not to compete contained therein is both void and non-severable. Alternatively, appellants argue that if the covenant is valid for the reason that it is ancillary to the sale of a business, then the trial court erred in excluding evidence that Drachman violated the covenant.

The restrictive covenant states: "11. *Restriction Against Competition.* Upon termination of employment of any Stockholder with the Corporation, such Stockholder shall not, for a period of two (2) years following the date of such termination, either for himself or

as an agent or employee of any person, partnership, corporation or legal entity, engage within an area of 125 miles of the present City Limits of the City of Atlanta, Georgia, in the business of moving or erecting, setting up or dismantling machinery or equipment, or in the business of steel erection, or in the business of the rental of cranes, welding machines, air compressors, gantries or scaffolding, which the parties agree are businesses in which the Corporation is now engaged; provided, however, that if the Corporation, in the interim between the date of this Agreement and the date of termination of employment should discontinue, within such area, any part of the types of businesses immediately above stated, this restriction shall not apply to any such discontinued type of business." The trial court ruled this covenant was unenforceable as a matter of law, and severed it from the remaining portions of the agreement.

The covenant fails to specify the activities that Drachman is prohibited from performing. In effect, he cannot be an employee "in any capacity" with a competitor. We must conclude, as did the trial court, that the covenant is impermissibly overbroad and therefore unenforceable. *Howard Schultz & Assoc. v. Broniec,* 239 Ga. 181 (236 SE2d 265) (1977). See *T. V. Tempo, Inc., v. T. V. Venture, Inc.,* 244 Ga. 776 (262 SE2d 54) (1979). We note that "[t]he covenant not to compete in this case was not made by the seller in conjunction with the sale of a business; it was made by the buyer in conjunction with the acquisition of an interest in a business." *Redmond v. Royal Ford, Inc.,* 244 Ga. 711, 714 (261 SE2d 585) (1979). Cf. *Jenkins v. Jenkins Irrigation,* 244 Ga. 95 (259 SE2d 47) (1979).[1]

Since the covenant not to compete is invalid, we must determine whether the trial court erred in finding the covenant severable from the remaining provisions of the agreement. "If the contract is severable, . . . the invalid provision does not render other provisions of the contract void. [Cits.]" *Austin v. Benefield,* 140 Ga. App. 96, 99 (230 SE2d 16) (1976).

"The issue of the severability of a contract is determined by the intention of the parties, as evidenced by the terms of the contract. Code Ann. § 20-112; *Spalding County v. Chamberlin & Co.,* 130 Ga. 649, 654 (61 SE 533) (1908)." *Dozier v. Shirley,* 240 Ga. 17, 18 (239 SE2d 343) (1977). "If it appears that the contract was to take the

---

[1] Appellants argue in their supplemental brief that *Sheppard v. Columbus Packaging Co.,* 146 Ga. App. 202 (245 SE2d 887) (1978), is applicable. *Sheppard,* however, concerns a deferred compensation plan in which payments similar to salary were paid to Sheppard. The repurchase of Drachman's stock in the present case is a purchase of his right to participate in the corporation, and it is not a deferred compensation plan within the meaning of *Sheppard.*

whole or none, then the contract would be entire. Clark, Con. 657." *Broxton v. Nelson,* 103 Ga. 327, 331 (30 SE 38) (1897); *Dolan v. Lifsey,* 19 Ga. App. 518, 519 (91 SE 913) (1917).

The contract at issue in the instant case contains one restrictive covenant and 14 other provisions dealing primarily with share transfer restrictions. Under the circumstances, we do not believe the parties intended that the entire repurchase agreement be premised upon the validity of the covenant not to compete. It is not such an "integral part" of the contract that its invalidity can be viewed as destroying the remainder of the agreement. See *Kloville, Inc. v. Kinsler,* 239 Ga. 569 (238 SE2d 344) (1977), *Broxton v. Nelson,* supra. The trial court did not err in holding the covenant not to compete severable from the other provisions of the contract.

3. Appellants argue that the trial court erred in allowing the jury to set the purchase price of the stock. They argue that, under the terms of the contract, a valuation set by the corporate auditor in November, 1979, must be controlling.[2] We cannot agree.

The trial court indicated prior to trial that it would provide a method for determining the purchase price of the stock. Later, the parties were apprised that the issues would be submitted to the jury in the form of special verdicts. See *Livingston v. Taylor,* 132 Ga. 1 (63 SE 694) (1908); Code Ann. § 81A-149. Both sides presented evidence of the stocks' value as determined on previous occasions, as well as extensive expert testimony on the purchase price per share. The trial court charged the jury regarding expert opinion, and instructed the jury to determine the purchase price of the stock "in accordance with paragraph nine (9) of the contract . . ."

Appellants did not object to this portion of the charge, nor did they challenge the trial court's preliminary determination that it would resolve the value issue. Under these circumstances, we can only conclude that appellants have waived any objection to the jury's determination of the purchase price of the stock. See *Christiansen v. Robertson,* 237 Ga. 711 (229 SE2d 472) (1976); *Vowell v. Carmichael,* 235 Ga. 387 (219 SE2d 732) (1975); *International Assn. of Bridge &c. Iron Workers v. Moore,* 149 Ga. App. 431 (254 SE2d 438) (1979).

4. Appellants argue that the trial court erred in setting December 2, 1978, as the date by which Superior was obligated to repurchase Drachman's stock and in awarding him interest from that date.

---

[2] The auditor set the value of a share of stock as of December 31, 1978 at $32,294.00. We note that in 1973, the auditor set the purchase price of the stock at $53,000.00. In 1975, 1976, and 1977, the Board of Directors had set the value at $50,000.00 per share.

Drachman's employment was terminated on October 3, 1978. The contract states: "In the event of termination of employment ... the terminating stockholder shall sell ... and the Corporation shall purchase ... all the shares of stock owned by him ..." In our view, this provision requires that the repurchase occur within a reasonable time after the date of termination. Under the circumstances presented, a reasonable time was, as a matter of law, no later than 60 days. Although the trial court erred in awarding interest from December 2, 1978, this error only benefits appellants and must be deemed without merit. We reject appellants' argument that the allowance of interest from December 2, 1978, constitutes an impermissible award of pre-judgment interest. *Norair Engineering Corp. v. Erickson's, Inc.,* 152 Ga. App. 489 (263 SE2d 165) (1979); Code Ann. § 20-1408. See generally, Fletcher, supra, § 5461.9.

5. Superior rents its office space from a corporation which is wholly owned by appellant Horne. Prior to 1978, the rent was set at $2,000.00 per month. In 1978, however, Horne unilaterally increased the rent to $4,000.00 per month, which was then paid in a lump sum for the entire year. In his complaint, appellee alleged that Horne's action was unfair and resulted in a wrongful diversion of $24,000.00 from Superior. The jury awarded him damages equal to his proportional share of the excess rent, or $6,000.00. Appellants assert in their next three enumerations of error that the damage award is erroneous, and we agree.[3]

"When a majority . . . stockholder is challenged for having engaged in self-dealing in property or services of the corporation . . . his fiduciary obligation results in [his having the burden of persuasion] to demonstrate that the transaction was scrupulously fair. But the test is an objective one, and the liability of the controlling . . . stockholder hinges on the fairness of the challenged transaction." Fletcher, supra, § 5811 (1980). See Cohen v. Ayers, 596 F2d 733 (7th Cir. 1979). In the instant case, the jury was instructed that Horne had the burden of establishing fair rental value. The jury found this value to be $4,150.00. Under an objective standard, it

---

[3] Notwithstanding the trial court's entry of an order under CPA § 54 (b) (Code Ann. § 81A-154 (b)), the "claim" relating to rental is not in fact final inasmuch as the trial court granted a new trial on that portion of the claim relating to punitive damages. "In cases such as this, however, where the trial court erroneously enters a certification pursuant to Code Ann. § 81A-154 (b), this court may treat the certification as one entered pursuant to Code Ann. § 6-701 (a) (2). Having so considered this matter, the court hereby grants the application for interlocutory appeal and considers the errors enumerated." *Georgia Farm Bureau Mut. Ins. Co. v. Wall,* 242 Ga. 176, 177 (249 SE2d 588) (1978).

cannot be said that the $4,000.00 rental charge was unfair to Superior. See *Ruffner v. Sophie Mae Candy Corp.,* 35 Ga. App. 114 (132 SE 396) (1926). Moreover, the Board of Directors expressly ratified the $4,000.00 per month rent. (Mr. Horne abstained from the vote.) It is well settled that a corporate board of directors may ratify the act of an officer which it could have authorized originally. See Cohen v. Ayers, 449 FSupp. 298 (N.D. Ill. 1978); 2 Fletcher, Cyclopedia Corporations (Directors) 762 (1969); Code Ann. § 22-716. As the increased rent was fair and subsequently ratified, appellee was not entitled to recover $6,000.00 in damages.[4]

6. The jury awarded appellee $175,000.00 in punitive damages. The trial court, finding the jury award excessive, granted appellants a new trial on this issue. In their eighth enumeration of error, appellants assert that the trial court did not go far enough. They argue that, under the facts of this case, appellee is simply not entitled to punitive damages.

Appellee's prayer for punitive damages is based upon 1) appellant Horne's allegedly excessive rental charge to the corporation and 2) the corporation's refusal to purchase his stock under the repurchase agreement.[5] In the absence of any other basis for recovery, we must conclude that appellee is not entitled to punitive damages.[6]

We have previously determined that the rental charged by appellant Horne's other corporation is not excessive. As appellee is not entitled to any damages for Horne's alleged wrongful diversion of funds, appellee may not recover punitive damages under this theory.

---

[4] We also note that, even if a recovery of any increased rent were proper, the recovery would go to the corporation. See *Short v. McKinney,* 111 Ga. App. 557 (142 SE2d 398) (1965). The general rule is that in derivative actions the full corporate loss inures to the corporation. See Henn, Corporations, p. 787, § 373 (2d Ed. 1970).

[5] The latter theory was not presented to the jury. Nor did it enter into the trial court's determination to grant a new trial on the issue of punitive damages.

In his supplemental brief, appellee argues that he also has a claim against Horne for tortious interference with the contractual relations of an employee (see *Nottingham v. Wrigley,* 221 Ga. 386 (144 SE2d 749) (1965)), and that this tort would provide a basis for the award of punitive damages. However, we have reviewed the pleadings, the requests to charge, and other items in the record and do not find any mention of such a claim. We will not consider a theory of recovery raised for the first time on appeal *Comolli v. Comolli Granite Co.,* 233 Ga. 461 (211 SE2d 750) (1975). See also *Delta Air Lines v. Isaacs,* 141 Ga. App. 209 (233 SE2d 212) (1977).

[6] Although the issue of punitive damages is not mentioned in the trial court's order under CPA § 54 (b) (Code Ann. § 81A-154 (b)), we will nonetheless consider it in the interest of judicial economy. See *Southeast Ceramics, Inc. v. Klem,* 246 Ga. 294 (271 SE2d 199) (1980).

It is well settled that a "claim for punitive damages will not lie when no other damages are recovered." *Haugabrook v. Taylor,* 225 Ga. 317 (168 SE2d 162) (1969).

Nor can appellee recover punitive damages based upon the corporation's refusal to purchase his stock. " 'Exemplary damages can never be allowed in cases arising on contracts.' Code § 20-1405. This is true even though the refusal to pay may be in bad faith. *Traders' Ins. Co. v. Mann,* 118 Ga. 381, 386 (45 SE 426) (1903)." *Nestle' Co. v. J. H. Ewing & Sons,* 153 Ga. App. 328, 332 (265 SE2d 61) (1980).

7. In their ninth enumeration, appellants assert that the trial court erred in disallowing $3,201.27 in attorney fees which, they assert, are due under the provisions of a demand note made by Drachman. The note was used to purchase the stock that was the subject of the repurchase agreement. At trial, the principal and interest due on the note were set-off against Superior's obligation under the purchase agreement.

Appellee does not challenge his liability on the note, but argues that, since all amounts due under the note were "consumed" in the set-off against appellants' much larger liability, attorney fees are not recoverable. Under the circumstances, we must agree. Appellants did not give appellee notice under Code Ann. § 20-506 until after appellee's claim arose under the repurchase agreement and suit had been filed. Their obligation to appellee under the repurchase agreement more than offset appellee's obligation under the note. As appellee's failure to pay subsequent to the notice was justified, the trial court correctly refused to allow attorney fees. See *Smith v. Baker,* 137 Ga. 298, 299 (72 SE 1093) (1911); *Langston v. Roby,* 68 Ga. 406, 411 (1881); Code Ann. § 20-1301.

8. In his cross-appeal, cross-appellant Drachman contends that the award of $175,000.00 in punitive damages should stand. We have already held in Division 6 of this opinion that punitive damages are unavailable. No further discussion is necessary on this issue.

Cross-appellant also contends that the trial court erred in permitting his stock to be valued as of December, 1977, rather than October 3, 1978, the date he terminated employment with Superior. We hold that the valuation date used by the trial court is in accordance with the purchase price provisions of the contract and, therefore, not erroneous. The judgment on the cross-appeal is therefore affirmed.

9. The judgment is affirmed on condition that damages for the allegedly excessive rental charge (i.e. $6,000.00) be written off; otherwise reversed. See *Woodbury v. Whitmire,* 246 Ga. 349, 351 (271 SE2d 491) (1980).

*Judgment affirmed upon condition stated in Division 9 of this opinion; otherwise reversed. All the Justices concur, except Marshall, J., who dissents to Division 2.*

DECIDED JULY 14, 1981.

*Trotter, Bondurant, Miller & Hishon, Robert H. Hishon, William E. Hoffman, Jr., Carroll, Greenfield, Beltran & Ellis, Frank J. Beltran,* for Horne et al.

*Greene, Buckley, DeRieux & Jones, Burt DeRieux,* for appellee (case no. 37015).

*Burt DeRieux, William W. Rich, Gregory J. Digel,* for appellants (case no. 37127).