**THIRD DIVISION
ANDREWS, P. J.,
DILLARD and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 20, 2014**

# In the Court of Appeals of Georgia

A13A2480. MILLER COUNTY BOARD OF EDUCATION v. MCINTOSH

DILLARD, Judge.

This dispute arises from the Miller County Board of Education's (the "Board") termination of Robert McIntosh's employment as superintendent of the Miller County Schools. McIntosh sued the Board for breach of contract, and the trial court denied the Board's motion for summary judgment. The Board then filed an application for interlocutory appeal, which we granted. On appeal, the Board claims that the trial court erred in denying its motion for summary judgment because (1) McIntosh failed to exhaust his administrative remedies before filing suit, and (2) the contract McIntosh claims was breached is void. For the reasons noted *infra*, we affirm.

The record shows that McIntosh and the Board entered into an employment agreement (the "2010 Employment Agreement"), whereby McIntosh would serve as the superintendent of Miller County Schools, effective December 30, 2010, and terminating on December 30, 2013. On April 16, 2012, the Board and McIntosh entered into a second employment agreement (the "2012 Employment Agreement") for a term commencing on April 16, 2012, and terminating on April 15, 2015. There do not appear to be, and the parties do not contend, that there are any material differences between the 2010 Employment Agreement and the 2012 Employment Agreement (referred to collectively herein as the "Employment Agreements"), other than McIntosh's respective terms of employment under those agreements. And under either contract, McIntosh was subject to dismissal or suspension for the same reasons, such as incompetency and insubordination. But prior to any such dismissal or suspension, the Employment Agreements provided that

> [b]efore dismissal or termination of contract or suspension, for any period of time, McIntosh shall be given a written statement of charges in sufficient detail to enable McIntosh to determine the nature of the grounds for dismissal or suspension action. McIntosh shall be required to file written response thereto within seven (7) days, setting forth the contentions of McIntosh, and stating distinctly any special defenses. Either party may request a pre-hearing conference for the purpose of

2

simplifying issues and making arrangements for an exchange of witness names and documents and other determinative evidence. Hearing will be held before a disinterested, impartial tribune of three (3) educators selected by the Board. The tribunal or State Bar member, as the case may be, shall be required to respond to written questions at least five (5) days before the hearing touching on his, her or their impartiality, and relationships to the Board or its attorney.

And by letter dated November 13, 2012, the Board terminated McIntosh's employment for cause, effective November 15, 2012,[1] informing him that "a Hearing with respect to the termination of your employment will be held before a Board-appointed Tribunal after November 15, 2012 provided that you request a hearing." This correspondence further provided that "[i]f a hearing is not requested on or before December 7, 2012 by 4:00 p.m., then your right to a hearing shall be deemed waived."

In a reply dated November 21, 2012, McIntosh responded to the termination letter, maintaining, *inter alia*, that its allegations were insufficient factually and legally to constitute cause for his termination, asserting his right to a pre-hearing

---

[1] The reasons cited were: "(1) Incompetency; (2) Insubordination, (3) Willful neglect of duties, (4) Failure to comply fully with warranty provisions; and (5) other good and sufficient cause."

3

conference, and advising that "we will have to work together to obtain a mutually agreeable tribunal date." Nevertheless, no tribunal was ever appointed by the Board, and no hearing was ever held. And thereafter, on January 28, 2013, McIntosh sued the Board in superior court for damages arising out of the Board's alleged breach of the 2012 Employment Agreement. The Board answered McIntosh's complaint, and, *inter alia*, moved that the complaint be dismissed for failure to exhaust administrative remedies. In addition, the Board asserted a counterclaim against McIntosh, seeking a declaratory judgment that the 2012 Employment Agreement is void and unenforceable.

The trial court denied the Board's subsequent motion for summary judgment, but certified its order for immediate review. The Board then filed an application for interlocutory appeal, which this Court granted. This appeal follows.

1. Because the exhaustion of administrative remedies is a threshold requirement for McIntosh to pursue his action in superior court, we will first address that claim. Specifically, the Board maintains that McIntosh failed to exhaust his administrative remedies because his response to the Board's termination letter was both too late and substantively insufficient. We disagree.

4

At the outset, we note that the "the terms and conditions of employment of a school superintendent by a local school system shall be determined exclusively by the contract between those parties."[2] This includes, without limitation, "the conditions under and procedures by which that contract may be terminated prior to the end of the term of that contract."[3] And if a school superintendent is terminated by the local school system, then that superintendent "must exhaust the administrative remedies made available to him under the contract before pursuing a claim in superior court."[4]

And while the Board asserts that the 2012 Employment Agreement is void, it represented to the trial court (and to this Court during oral argument) that, in such a case, the relationship between the parties is to be governed by the 2010 Employment Agreement. McIntosh agrees with that assessment, so there is no dispute between the parties on this particular point. Thus, for purposes of this appeal, it is ultimately of no consequence that the 2012 Employment Agreement is void, because, as previously

---

[2] OCGA § 20-2-101 (f); *see also Grady County Bd. of Educ. v. Hickerson*, 275 Ga. 580, 580 (571 SE2d 391) (2002) (noting "the directive of OCGA § 20–2–101(f) that the terms and conditions of a superintendent's employment by a school system are governed by the parties' contract.").

[3] OCGA § 20-2-101 (f).

[4] *Hickerson*, 275 Ga. at 581.

noted, the termination provisions of the 2012 Employment Agreement and the 2010 Employment Agreement are identical. It follows, then, that whatever the parties' position may be as to the viability of the 2012 Employment Agreement, both agree that McIntosh was, nevertheless, employed under a contract (*i.e.*, the 2010 Employment Agreement) that afforded him a termination hearing "before a disinterested, impartial tribunal of three (3) educators selected by the Board." Additionally, because the Board's motion for summary judgment was, in substance, a motion to dismiss for McIntosh's alleged failure to exhaust administrative remedies,[5] we review that ruling "under the de novo standard of review."[6]

---

[5] If it is determined that McIntosh failed to exhaust his administrative remedies, then his suit in superior court is "procedurally barred." *Mayor & Aldermen of the City of Savannah v. Savannah Cigarette & Amusement Svcs.*, 267 Ga. 173, 174 (476 SE2d 581) (1996). *See also We, the Taxpayers v. Bd. of Tax Assessors of Effingham County*, 292 Ga. 31, 35 (2) (734 SE2d 373) (2012) (finding taxpayers' failure to exhaust administrative remedies deprived the trial court of subject-matter jurisdiction over the complaint); *Norman v. United Cities Gas Co.*, 231 Ga. 788, 788 (204 SE2d 127) (1974) (class action properly dismissed for lack of jurisdiction because consumer did not pursue administrative remedies); *Arp v. Bremen Bd. of Ed.*, 171 Ga. App. 560, 560 (320 SE2d 397) (1984) (affirming dismissal of coach's breach-of-contract claim against the board of education because he failed to exhaust his administrative remedies). As it concerns a matter in abatement, the trial court's consideration of evidence outside the pleadings did not convert the Board's request to dismiss the complaint to a motion for summary judgment. *See, e. g., Church v. Bell*, 213 Ga. App. 44, 45 (443 SE2d 677) (1994) (concluding that "[u]nder OCGA § 9-11-12 (b), … only motions under OCGA § 9-11-12 (b) (6), failure to state a claim upon which relief can be granted, are converted to motions for summary judgment when

So viewed, under either Employment Agreement, "McIntosh shall be given a written statement of charges" and is "required to file written response thereto within seven (7) days, setting forth the contentions of McIntosh, and stating distinctly any special defenses." In this respect, the record shows that the Board transmitted the letter containing the written charges by certified mail on November 13, 2012; McIntosh received the letter on November 15, 2012; and McIntosh responded to the Board's letter by facsimile transmission, certified mail, and regular mail on November 21, 2012. The Board then received McIntosh's certified letter on November 26, 2012. And as a result of this sequence of events, the Board maintains that McIntosh "did not file a written response to the November 13, 2012 termination letter setting forth his contentions or stating distinctly any special defenses by November 20, 2012," and thus failed to avail himself of the right to a hearing regarding his termination.

---

matters outside the pleadings are considered," and any evidence considered by the trial court was pursuant to OCGA § 9-11-43 (b)). *Compare Day v. Brantley County Sch. Dist.*, 298 Ga. App. 717, 717 (680 SE2d 496) (2009) (affirming grant of summary judgment where there was nothing in the record to show plaintiff pursued her administrative remedies).

[6] *Welch v. Ga. Dep't of Transp.*, 276 Ga. App. 664, 664 (624 SE2d 177) (2005) (punctuation omitted). *Accord Sadi Holdings, LLC v. Lib Props., Ltd.*, 293 Ga. App. 23, 23 (666 SE2d 446) (2008).

The Board's interpretation of the Employment Agreements assumes that the seven-day period for responding to the written statement of charges commenced with the mailing of the letter containing the charges, but that is not what the contracts actually provide. Indeed, the applicable termination provision contemplates that McIntosh be "given" the written statement of charges, but it does not specify any particular method or manner in which that might occur, by mail or otherwise. McIntosh was then "required to file written response [to the written statement of charges] within (7) days, setting forth the contentions of McIntosh, and stating distinctly any special defenses." If McIntosh is deemed "given" the charges upon their mailing by Board, then he would be at the mercy of the vagaries of the mail as to the time (or no time at all) afforded him to formulate and file his contentions in response to such charges. As such, any interpretation of the termination provision that possibly results in McIntosh being prevented from filing a timely response is patently absurd and will not be adopted by this Court.[7] Instead, viewing the agreement as a

---

[7] *See McIntyre v. Zac-Lac Paint & Lacquer Corp.*, 107 Ga. App. 807, 820 (131 SE2d 640) (1963) (Felton, J., concurring specially) ("The courts have properly recognized the fallibility of lawyers and laymen in the writing of contracts and seek to lend a helping hand in the solution of the problems of ambiguities and conflicts in contracts and go a long way towards giving a contract a construction which is reasonable and fair and not one which is ridiculous and absurd.").

whole,[8] we conclude that the requirement that McIntosh be "given"[9] a statement of written charges contemplates that he actually *receive* those charges, and the applicable time period for McIntosh to "file [a] written response" began to run at that time. Accordingly, McIntosh had until November 22, 2012 to "file" his response to the Board's charges.

And setting aside the question of whether the date McIntosh transmitted his response, as opposed to the date the Board actually received the response,[10] might suffice, McIntosh's reply was filed with the Board in a timely fashion. The Thanksgiving holiday in 2012 fell on November 22, and the record shows that the Miller County School System was closed that entire week. Then, when the school

---

[8] *See Archer W. Contractors Ltd. v. Estate of Pitts*, 292 Ga. 219, 224 (2) (735 SE2d 772) (2012) (providing that contracts must be construed as a whole); *State Auto Property and Cas. Co. v. Matty*, 286 Ga. 611, 612 (690 SE2d 614) (2010) (same); *Triple Eagle Assoc., Inc. v. PBK, Inc.*, 307 Ga. App. 17, 24 (2)(c) (704 SE2d 189) (2010) (same); OCGA § 13-2-2 (4) ("The construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part.").

[9] The Compact Oxford English Dictionary 674 (2d ed. 1991) (defining "give" as "[t]o deliver or hand (something) to a person, so that he takes it.").

[10] McIntosh did not produce evidence supporting when or if the Board received the facsimile transmission and does not rely on the Board's receipt of that transmission to show that his response was timely.

system reopened on November 26, 2012, the Board received McIntosh's response, which was the next business day following November 22, 2012. As a general rule, albeit by analogy as opposed its express provisions, OCGA § 1-3-1 (d) (3) applies to contracts.[11] Thus, because the last day for McIntosh to file his response fell on a holiday, he had until the next business day to fulfill that duty, and he did so.[12]

The Board further maintains that even if McIntosh's response was timely he, nevertheless, failed to comply with the contractual requirement that his response "set[] forth the contentions of McIntosh, and stat[e] distinctly any special defenses." This is because, in his reply, McIntosh simply contended that he "denie[d] the allegations of the Charge letter as they are insufficient factually and legally to

---

[11] *See Allstate Ins. Co. v. Stephens*, 239 Ga. 717, 718-19 (238 SE2d 382) (1977) (reaffirming prior holding that by analogy former Code Ann. § 102-102 (8), providing for computation of days as to the exercise of any privilege or discharge of any duty, applies to contracts as well as statutes); *Brooks v. Hicks*, 230 Ga. 500, 501-02 (197 SE2d 711) (1973) (referencing authority that statutes excluding a terminal Sunday or holiday from a period of time "provide a safe and sound rule to be observed in the interpretation of contracts where no different meaning is given by the instrument to be construed or where no different intention is manifest from the contract" (citation and emphasis omitted)); *Sanders v. Allstate Ins. Co.*, 207 Ga. App. 461, 462 (2) (428 SE2d 575) (1993) (applying OCGA § 1-3-1 (d) (3) to an insurance policy).

[12] As to prescribed periods not less then seven days, "[w]hen the last day prescribed for such action falls on a public and legal holiday . . . the party having the privilege or duty shall have through the next business day to exercise the privilege or to discharge the duty." OCGA § 1-3-1 (d) (3).

10

constitute cause for termination of his contract under Georgia law." And in the Board's view, this general denial of the detailed allegations in the charge letter and utter failure to set forth any specific factual contentions or special defenses does not satisfy the requirements set forth in the Employment Agreements.

We agree with the Board that its lengthy written statement of charges was consistent with its contractual obligation to provide "sufficient detail to enable McIntosh to determine the nature of the grounds for dismissal . . . ." But in stark contrast, there is nothing in the termination provision obligating McIntosh to provide a detailed response to the Board's written statement of charges. And as a principle of construction (applicable to statutes and contracts alike), "[e]xpressio unius est exclusio alterius," or "[t]he express mention of one thing implies the exclusion of another."[13] Indeed, a comparison of the express requirements of the written statement of charges and McIntosh's obligation to merely set forth his "contentions" in response thereto indicates that the parties did not intend to place an equivalent explanatory

---

[13] *Krogh v. Pargar, LLC*, 277 Ga. App. 35, 39 (2) (625 SE2d 435) (2005) (punctuation omitted); *see also Bailey v. Lumpkin*, 1 Ga. 392, 1846 WL 1192, *12-13 (1846) ("The maxim 'expressio unius est, exclusio alterius,' the express mention of one thing implies the exclusion of another, is frequently quoted in our courts . . . This maxim applies, in the first place, rather in the construction of contracts than statutes . . . .").

11

burden on McIntosh as to the contents of his reply. Accordingly, we find McIntosh's contentions, albeit general in nature, are nevertheless sufficient to comply with his contractual obligations. Furthermore, while it is true that McIntosh did not set forth specifically designated "special defenses," the Employment Agreements only required that such defenses be stated if there are "any," not that McIntosh have such defenses or waive his right to a hearing. Thus, the record shows that McIntosh's response was both timely and in substantive compliance with the requirements of the Employment Agreements,[14] and thus the Board did not establish that McIntosh waived his right to a hearing.

Lastly, McIntosh was not required to seek relief under OCGA § 20-2-1160 before pursuing a claim in superior court. That statutory provision provides, in pertinent part, that "[a]ny party aggrieved by a decision of the local board rendered on a contested issue after a hearing shall have the right to appeal therefrom to the State Board of Education."[15] And here, the record shows only that—at the time he

___

[14] In light of these findings, we need not consider if the parties contemplated that a timely and sufficient response to the written statement of charges was a prerequisite to the administrative hearing contemplated by the Employment Agreements, nor whether the Board waived its rights thereunder by informing McIntosh that he had until "December 7, 2012 by 4:00 p.m." to request a hearing.

[15] OCGA § 20-2-1160 (b).

sought relief in superior court—McIntosh had done all that was required of him under the applicable provisions of the Employment Agreements,[16] while the Board, having taken the position that McIntosh's right to a hearing was waived, does not suggest that it ever intended to proceed with the appointment of the hearing tribunal. It would have been futile, then, for McIntosh to attempt an appeal to the State Board of Education under OCGA § 20-2-1160, "since such appeals are confined to the record and presuppose a hearing was held."[17] It follows, then, that the trial court did not err in refusing to dismiss McIntosh's complaint for failure to exhaust his administrative remedies.

2. The Board further contends that it was entitled to summary judgment because the 2012 Employment Agreement is void and unenforceable for violating OCGA § 20-2-101 (a) and (d). We agree with the Board that the 2012 Employment Agreement is void because the Board had no authority to enter into that particular

---

[16] *See generally DeKalb County v. Cooper Homes*, 283 Ga. 111, 113 (1) (657 SE2d 206) (2008) (finding that the available remedies are assessed at time relief is sought in the superior court); *accord North Fulton Med. Center, Inc. v. Roach*, 265 Ga. 125, 127 (453 SE2d 463) (1995) ("The appropriate inquiry is whether the legal remedy existed at the time mandamus relief was sought.").

[17] *Atlanta Pub. Schs. v. Diamond*, 261 Ga. App. 641, 643 (1) (583 SE2d 500) (2003).

13

contract. We, nevertheless, affirm the trial court's denial of the Board's motion for summary judgment because, construing McIntosh's complaint forgivingly (as we are required to do at this stage of the proceedings),[18] he asserted a claim for breach of his employment agreement, and the parties agree that if the 2012 Employment Agreement is void then McIntosh was employed by the Board under the 2010 Employment Agreement at the time of his termination.

At the outset of our analysis, we note that summary judgment is only warranted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[19] We review the grant or denial of a motion for summary judgment *de novo*,[20] and we view the evidence, and the reasonable inferences drawn therefrom, in a light most

---

[18] *See Mixon v. Georgia Bank & Trust Co.*, 154 Ga. App. 32, 32 (267 SE2d 483) (1980) (noting that in considering a motion for summary judgment by the defendant, the complaint is to be construed forgivingly in favor of the complainant.).

[19] OCGA § 9-11-56 (c).

[20] *See Woodcraft by MacDonald, Inc. v. Ga. Cas. and Sur. Co.*, 293 Ga. 9, 10 (743 SE2d 373) (2013).

favorable to the nonmovant.[21] With these guiding principles in mind, we will now address the Board's arguments in support of this enumeration of error.

(a) To begin with, we agree with the Board that the 2012 Employment Agreement is void because it (as previously constituted) did not comply with OCGA § 20-2-101 (d), which provides that,

> [a]t any time during the 12 months immediately preceding the expiration of an appointed school superintendent's contract or term of office, or when a vacancy in the office of school superintendent occurs, the local board may appoint and employ a successor in accordance with the above provisions of this Code section, notwithstanding that the terms of some or all of the board members will expire before the employment of the superintendent so appointed and employed begins.[22]

Indeed, OCGA § 20-2-101 (d) contemplates two conditions under which a local school board may appoint and employ a successor:[23] (1) "any time during the 12

---

[21] *See Cowart v. Widener*, 287 Ga. 622, 624 (1) (a) (697 SE2d 779) (2010).

[22] OCGA § 20-2-101 (d).

[23] It might be argued that as an incumbent superintendent, McIntosh was not a "successor" for purposes of OCGA § 20-2-101 (d). However, the General Assembly makes no such distinctions in the text of OCGA § 20-2-101 as to incumbents. Furthermore, to exclude an incumbent superintendent from the application of OCGA § 20-2-101 (d) would be contrary to the General Assembly's textual directive to limit, rather than expand, the term of superintendent employment contracts. *See* OCGA § 20-2-101 (a), discussed *infra*. It is well established that when considering the

15

months immediately preceding the expiration of an appointed school superintendent's contract or term of office" or (2) upon a vacancy in the office of the superintendent. And neither condition applies here, as the 2012 Employment Agreement was entered into 20 months *before* the expiration of the 2010 Employment Agreement, and there was no vacancy in the office of superintendent at the time the 2012 Employment Agreement was executed by the parties. Thus, in April of 2012, the Board had no authority to enter into the 2012 Employment Agreement, and by doing so, it deprived the Board—as later constituted and at a time duly invested with such power—of the discretion to choose its superintendent.[24] It follows, then, that the 2012 Employment Agreement is *ultra vires* and void.[25]

---

meaning of a statute, "our charge as an appellate court is to presume that the General Assembly meant what it said and said what it meant." *Martinez v. State*, ___ Ga. App. ___ (750 SE2d 504, 509) (2013) (citation and punctuation omitted). And toward that end, "we must afford the statutory text its plain and ordinary meaning, consider the text contextually, and read the text in its most natural and reasonable way, as an ordinary speaker of the English language would." *Id*. (citation and punctuation omitted).

[24] Governor Nathan Deal appointed five new members to the Board on September 29, 2012, and these individuals were sworn into office on October 1, 2012.

[25] *See, e.g.*, *Smith v. Ouzts*, 214 Ga. 144, 146 (1) (103 SE2d 567) (1958) (concluding that the board of education had no authority to agree to limit location of a school building as "any contract which controls or restricts the discretion vested in a public officer or public body is contrary to public policy and void"); *Barr v. City*

(b) The Board also argues that, in light of OCGA § 20-2-101 (a), the 2012 Employment Agreement is void as the product of an invalid "roll-over" provision contained within the 2010 Employment Agreement. The premise of this argument is flawed, however, because the term of McIntosh's employment was not unilaterally extended by the Board nor did McIntosh's term of employment under the 2012 Employment Agreement "commence on December 30 in the year that the contract is extended," as provided in the 2010 Employment Agreement's rollover provision. In any event, the 2012 Employment Agreement is void under OCGA § 20-2-101 (d) for the reasons already noted *supra*.

However, the Board's challenge to the validity of the "roll-over" provision is relevant to the extent it implies that the 2010 Employment Agreement is likewise void. And while we agree with the Board that the roll-over provision of that contract is void, the remainder of the agreement is not destroyed thereby.

The 2010 Employment Agreement allows the Board "to extend the contract of employment herein for an additional term of three (3) years, commencing on

---

*Council of Augusta*, 206 Ga. 750, 750 (3) (58 SE2d 820) (1950) (finding contract "ultra vires and void, in that it restricted legislative and governmental powers of future councils of the city"); *Aven v. Steiner Cancer Hosp., Inc.*, 189 Ga. 126, 140 (5) (5 SE2d 356) (1939) (rule against binding successors arises in common law).

17

December 30 in the year the contract is extended, and the terms and provisions of this agreement shall be applicable." And under the plain terms of OCGA § 20-2-101 (a), "[s]uperintendents of each school system shall be employed by the local board of education under written contracts for a term of not less than one year and not more than three years."

Although the 2010 Employment Agreement is for a term of three years, OCGA § 20-2-101 (a) also provides that "[a]ny provision of any such contract which provides for an extension of the duration of employment thereunder, whether automatic or contingent upon the occurrence of one or more events, shall be void if that extension would result in employment under the contract, as extended, for a period which exceeds three years." Thus, contingent upon the event of the Board's exercise of the right, the roll-over provision of the 2010 Employment Agreement contemplates an extension of the term of employment beyond three years. As such, pursuant to OCGA § 20-2-101 (a), that "provision . . . shall be void."

Nevertheless, so long as the 2010 Employment Agreement is severable, as determined by the intent of the parties, "the invalid provision does not render other

18

provisions of the contract void."[26] And given that the roll-over provision is patently ancillary to the numerous promises contained in the 2010 Employment Agreement, we conclude that the parties did not intend for the invalidity of the roll-over provision to destroy the remainder of the contract.[27]

(c) Notwithstanding the foregoing, the Board represented to the trial court (and this Court) that McIntosh and the Board's employment relationship is governed by the 2010 Employment Agreement if the 2012 Employment Agreement is void,[28] and

---

[26] *Horne v. Drachman*, 247 Ga. 802, 805 (2) (280 SE2d 338) (1981) (punctuation omitted). *See* OCGA § 13-1-8 (a) ("A contract may be either entire or severable. In an entire contract, the whole contract stands or falls together. In a severable contract, the failure of a distinct part does not void the remainder."); OCGA § 13-1-8 (b) ("The character of the contract in such case is determined by the intention of the parties."). Similarly, if the Board had been authorized to enter into the 2012 Employment Agreement, which also contains a "roll-over" provision, then the 2012 Employment Agreement would not be void in its entirety on that ground.

[27] *See Horne*, 247 Ga. at 806 (2) (finding that a covenant was not such an integral part of the contract that the parties intended that the agreement was premised on its validity).

[28] Although the transcript of the motion hearing is not included in the record, the record contains post-hearing briefs in which the Board responded to questions raised by the trial court at the hearing, including "whether entering into the [2012 Employment Agreement] functions to terminate the [2010 Employment Agreement.]" In response, according to the Board, "the [2012 Employment Agreement] is unlawful and void" but "the employment relationship between the parties is governed by the [2010 Employment Agreement], which expires December 30, 2013 . . . ."

McIntosh agrees with the Board on this particular point. Thus, although McIntosh's term of employment could not have been extended by the void 2012 Employment Agreement beyond December 30, 2013, he was nevertheless employed under the 2010 Employment Agreement when he was terminated effective November 15, 2012. And construing McIntosh's complaint forgivingly,[29] although McIntosh specifically references only the 2012 Employment Agreement in his complaint, he also sought damages for the breach of his employment contract.[30] The Board failed to show, then, that there is no genuine issue of material fact as to whether McIntosh may recover on his claims that, *inter alia*, "judgment be entered for contractual damages" and that the Board's conduct "constitutes a breach of the written agreement between [McIntosh] and the [Board]." Accordingly, the trial court did not err in denying the Board's motion for summary judgment.

*Judgment affirmed. Andrews, P. J., and McMillian, J., concur.*

---

[29] *See, e. g.*, *Landmark American Ins. Co. v. Khan*, 307 Ga. App. 609, 612 (1) (705 SE2d 707) (2011) (finding that "complaints and other pleadings should be construed as to do substantial justice . . . in favor of the pleader") (punctuation omitted)).

[30] The Board acknowledges that, "other than providing a new termination date," the 2012 Employment Agreement "contains identical material terms as the [2010 Employment Agreement]."