
Filed
Supreme Court of Guam, Clerk of Court

# IN THE SUPREME COURT OF GUAM

**GUAM WATERWORKS AUTHORITY,**
Petitioner-Appellee,

**v.**

**CIVIL SERVICE COMMISSION,**
Respondent-Appellee,

**and**

**JOEY A. TAITANO,**
Real Party in Interest-Appellant.

Supreme Court Case No. CVA24-012
Superior Court Case No. SP0030-23

## OPINION

## Cite as: 2026 Guam 3

Appeal from the Superior Court of Guam
Argued and submitted on August 11, 2025
Hagåtña, Guam


E-Received
5/7/2026 4:41:03 PM

Appearing for Real Party in Interest-Appellant:
Joshua D. Walsh, *Esq.*
Razzano Walsh & Torres, P.C.
139 Murray Blvd., Ste. 100
Hagåtña, GU 96910

Appearing for Petitioner-Appellee:
Jay Matthew Strader, *Esq.* (briefed & argued)
Assistant Attorney General
Office of the Attorney General
Bank of Hawaii Bldg.
134 W. Soledad Ave., Ste. 302
Hagåtña, GU 96910

Theresa G. Rojas, *Esq.* (briefed)
Legal Counsel
Guam Waterworks Authority
Gloria B. Nelson Public Service Bldg.
688 Route 15
Mangilao, GU 96913

Appearing for Respondent-Appellee:
Katherine M. Nepton, *Esq.* (briefed)
Civil Service Commission
Bell Tower
710 W. Marine Corps Dr., Ste. 201
Hagåtña, GU 96910

BEFORE: F. PHILIP CARBULLIDO, Presiding Justice; KATHERINE A. MARAMAN, Associate Justice; and JOHN A. MANGLONA, Justice *Pro Tempore*.[1]

**CARBULLIDO, P.J.:**

**[1]**     The facts of this case are not disputed.  The Guam Waterworks Authority ("GWA") terminated Joey A. Taitano's employment for refusing to retake a drug test under direct observation.  GWA mailed Taitano two "adverse action forms" that provided notice of proposed adverse action (collectively the "NPAA") on May 6, 2021.  Taitano received the NPAA on May 13.  GWA terminated Taitano on May 18.  Under GWA's Personnel Rules and Regulations ("GWA Rules"), an employee has ten days to answer "after *receipt* of the notice," and the General Manager may not proceed with the adverse action until the notice period has expired.  GWA Pers. R. & Regs. 11.200C, § 12.0 (approved by Guam Pub. L. 28-159:7 (Dec. 29, 2006)) (emphasis added).

**[2]**     Taitano appealed his termination to the Civil Service Commission ("CSC"), arguing in part that he was not given adequate time to answer the NPAA.  The CSC ultimately vacated the termination because an insufficient number of commissioners voted to uphold it.  GWA then appealed to the Superior Court.  The trial court concluded that the notice period began on May 6 because, under the GWA Rules, service is complete upon mailing, and thus Taitano's termination was valid.  Taitano appeals the trial court's determination, claiming that the court had no jurisdiction to hear GWA's petition for judicial review because it was filed late.  He further argues that his termination was invalid because it occurred a mere four days after he received the NPAA. We conclude that the plain language of the GWA Rules mandates that an employee be given ten days to respond after receiving notice before adverse action is taken.  We reverse.

---

[1] The signatures in this opinion reflect the titles of the justices at the time this matter was argued and submitted.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

[3]    On March 30, 2021, Taitano underwent a random drug test which was later deemed invalid. Taitano then refused to retake the drug test under direct observation.  GWA placed Taitano on administrative leave on April 20, 2021.

[4]    GWA sent two "Adverse Action Forms" to Taitano and the Civil Service Commission ("CSC").  The first form was marked as a "Notice of Proposed Adverse Action"; the second labeled the type of action as a "Notice of Proposed and Immediate Suspension During Notice Period (13.1)."  Record on Appeal ("RA"), tab 27 (Excerpts Admin. R., June 28, 2024), Ex. 1 (Notice Proposed Adverse Action, May 6, 2021); *id.*, Ex. 2 (Notice Proposed & Immediate Suspension, May 6, 2021) (hereinafter, "Notice Proposed Suspension").  Although GWA dated both forms April 21, 2021, there is no record of either being sent before May 6.[2]

[5]    The first form did not state the nature of the adverse action being proposed against Taitano beyond stating, "These are infractions in anticipation of a proposed action, and not a matter already decided.  Be advised that a final adverse action will be initiated that may result in termination of your employment, demotion or suspension action."  *Id.*, Ex. 1 at unnumbered p. 6 (Notice Proposed Adverse Action).  The second form was for a "suspension during notice period," from May 7 until June 4 (twenty working days).  *Id.*, Ex. 2 at unnumbered pp. 1, 3 (Notice Proposed Suspension) (emphasis omitted).  Both forms provided in bold font that "Employee must answer orally or in writing within ten (10) calendar days after receipt of this notice."  *Id.*, Ex. 1 at unnumbered p. 1 (Notice Proposed Adverse Action); *id.*, Ex. 2 at unnumbered p. 1 (Notice Proposed Suspension) (emphasis omitted).

---

[2] The trial court did not distinguish between the two forms in its Decision and Order.  As a handwritten note on the first form cross references a handwritten note on the second, and there is a single certified mail receipt, we take this to mean the trial court found both forms were mailed together.

**[6]**    GWA sent the NPAA via certified mail to Taitano's P.O. Box at the Hagåtña post office. On appeal, GWA does not dispute Taitano's claim that he received the NPAA on May 13. GWA requested a return receipt[3] for the NPAA, although no return receipts appear in the record before us. GWA's Personnel Services Administrator testified at the CSC hearing and, on recross-examination by Taitano's representative, appeared to admit that GWA had received a return receipt showing that Taitano received the NPAA on May 13:

> Q    . . . . [C]ould you look at [Exhibit] M-106? That is a certified mail receipt; is that right?
>
> A    Yes.
>
> Q    And is there a box checked there, return receipt is requested or what does it say? "Hard copy." Return receipt hard copy. Is that correct?
>
> . . . .
>
> A    Yes.
>
> . . . .
>
> Q    So, not only are they going to serve it personally on the employee but they also send you a receipt showing the employee received it. Is that right?
>
> A    Yes.
>
> Q    So, even though GWA received a receipt showing that he received the document on May 13, you proceeded with adverse action anyway; is that correct?
>
> A    Yes.
>
> Q    Yes. So, GWA knew that the Employee received the document on May 13.
>
> A    (pauses)

---

[3] "Certified Mail through the U.S. Postal Service provides written proof of mailing, and Return Receipt service provides written proof of delivery." *Pineda v. Pineda*, 2005 Guam 10 ¶ 15.

> [Taitano's representative]:     So, okay.  I just want to make it clear that service . . . .  [T]he Employee did not receive it till May 13th.  The agency had knowledge of it, but they chose not to consider the Employee's Answer.

*See* RA, tab 22, CSC Tr. at 9, 60-61 (CSC Merits Hr'g, Dec. 7, 2022).  However, in response to questions from the CSC Board Chairman, the Personnel Administrator clarified that although the NPAA was sent via certified mail return receipt requested, GWA never received the return receipt from the post office:

> Q       So, can you just go back and try to track down the timeframe?  Can you just clarify -- I need some clarification. . . .
>
> . . . .
>
> Q       So, when exactly -- I'm trying to look at a date here, the post office, but I couldn't figure the date.  What date did they mail out the notice to the employee?
>
> A       May 6.
>
> Q       May 6.  So, the employee received the notice of proposed adverse action; correct?  On what date is that?
>
> A       I don't believe the receipt from the post office is in the exhibit.  But according to the Employee's Notice, he received it on the 13th of May.
>
> Q       So, he received officially the [NPAA] on May 13?
>
> A       Based on his response.  Based on his response letter to the general manager, he claimed that he received the notice on May 13th.
>
> Q       That's the employee's response.  But this is a certified mail, right?
>
> A       Yes.
>
> Q       I'm trying to find exactly where the post office return it back by certifying that the -- the receiver or the employee received the mail.  Do you know what date is this?
>
> A       I don't recall what date certified by the post office; because we didn't have the receipt that is usually sent to us was not received from the post office.

*Guam Waterworks Auth. v. Civ. Serv. Comm'n (Taitano)*, 2026 Guam 3, Opinion

Page 7 of 31

Q     So, management did not receive the --

A     Yes.

Q     -- your office did not receive the --

A     Yeah.

Q     -- notice that the employee did pick up the mail from the post office?

A     Yeah. . . .  I believe at the time, because of the Covid situation --

Q     Okay.

A     -- they were probably delayed or we never received the receipt that the employee actually signed received.

Q     But the employee --

A     From the post office.

Q     So, since you did not receive that or Management did not receive the return notice from the post office saying that the employee did receive -- listening to the testimony of this case, the employee did notice Management that he did receive the [NPAA] on May 13, 2021.  Right?

A     Yes.

Q     That's from the Employee's notice?

A     Yes.

Q     And not from the post office?

A     Not from the post office.

*Id.* at 63-66.

**[7]**    GWA terminated Taitano's employment on May 18, 2021.  GWA sent a third adverse action form via certified mail to Taitano, this time giving notice of final adverse action ("NFAA").  GWA sent the NFAA to Taitano's P.O. Box.

[8]      The NFAA told Taitano: "You ignored the opportunity given to you to explain or respond to the NPAAs to the [General Manager].  You failed to answer during the given notice [sic]."  RA, tab 27 (Excerpts Admin. R.), Ex. 3 at unnumbered p. 7 (Notice Final Adverse Action, May 18, 2021).  The NFAA further stated that Taitano's "failure to answer to the notice provided"—among other actions[4]—was a "conclusive" violation of GWA's Drug and Alcohol-Free Workplace Policy and subjected him to immediate dismissal.  *Id.*   The NFAA concluded by stating: "GWA Management finds that the charge is substantiated, and that you have offered no answer in response to the charges, and you are therefore dismissed effective: May 18, 2021."  *Id.* at unnumbered p. 8.

[9]      On May 21, GWA received an answer from Taitano addressing the NPAA (but not the NFAA).  Taitano's answer stated that he received the NPAA "via certified mail on May 13, 2021." *Id.*, Ex. 4 at 1 (Employee's Answer, May 21, 2021).  His answer further stated that he was "very confused" by the drug-testing process and that direct observation was "a major invasion of [his] privacy rights."  *Id.*  Taitano wrote that he had neither been provided with the testing policy, nor had he received any training explaining it.  *Id.* at 1-2.  Taitano further denied any drug use and expressed his willingness to perform another test, including "saliva, blood or even a urine sample collected in a professional and discreet manner."  *Id.* at 1.  Because GWA had already mailed the NFAA terminating Taitano's employment on May 18, it did not consider his answer to the NPAA.

[10]     Taitano appealed GWA's decision to the CSC on June 7, 2021.  The CSC held a hearing on the merits over four days.

[11]     Because one commissioner was absent during one of the days of the hearing, he recused himself, leaving a quorum of five commissioners to decide Taitano's case.  The remaining commissioners voted 3-1 to uphold Taitano's termination, with one commissioner abstaining.

---

[4] The NFAA also cited Taitano's refusal to test and failure to utilize the drug-test appeal procedure.  *See* RA, tab 27 (Excerpts Admin. R., June 28, 2024), Ex. 3 at unnumbered p. 7 (Notice Final Adverse Action, May 18, 2021).

However, the CSC's enabling statute requires a vote of at least four members to uphold an adverse action. *See* 4 GCA § 4402 (2005). Thus, the CSC vacated the termination. Because the CSC's enabling statute requires a vote of four members to issue findings of fact, *see Guam Power Auth. v. Civ. Serv. Comm'n (Guerrero)*, 967 F.2d 586, 1992 WL 153005, at *2 (9th Cir. 1992) (unpublished table decision) ("[N]o findings can be issued from the Commission without four concurring votes . . . ."), none were issued. However, the reason for the dissenting vote was the belief that Taitano received the NPAA on May 13—which meant GWA did not give Taitano the full ten days to respond under its Rules when it terminated him on May 18. *See* RA, tab 22, CSC Tr. at 78-85, 88-90 (CSC Merits Hr'g, Dec. 9, 2022).

[12]　　GWA then petitioned the Superior Court for judicial review. GWA maintained that the CSC's decision vacating the termination because it "did not meet its required vote of four" was "subject to de novo review since the ruling against [GWA] resulted from a question of law relative to an interpretation of [GWA]'s rules service [sic] for proposed and final adverse actions and the dates (or action) which trigger an Employee Response." RA, tab 1 at 5 (Pet. Jud. Rev., Mar. 8, 2023) (citing *Fagan v. Dell'Isola*, 2006 Guam 11 ¶ 11). GWA argued that "[i]n effect, the Commissioner (whose vote was cast in favor of Taitano) determined that Taitano's proposed adverse action was effectively 'served' on the date Taitano indicated the adverse action was 'received' (on May 13, 2021) in contravention with the law and applicable rules." *Id.* GWA also argued that "the CSC further failed to state the basis on which the Commissioners reached their decision as the signed Judgment fails to provide this court the ability to understand the factual basis for its ultimate conclusion." *Id.* at 6. GWA requested that the Superior Court vacate the CSC's decision, adopt GWA's position that the notice period begins running on the day notice is

mailed, and remand to the CSC for specific findings of fact and conclusions of law affirming termination. *Id.* at 6-7.

[13]      After ordering briefing from the parties and holding a hearing on the merits, the Superior Court granted GWA's petition. RA, tab 33 at 7 (Dec. & Order, Oct. 23, 2024). Although the CSC did not issue factual findings, the Superior Court appears to have accepted the reasoning for the dissenting vote as the basis for vacating the termination. *See id.* at 6-7. The Superior Court found that Taitano had ten days to reply to GWA's NPAA, starting on the date it was mailed rather than the date it was received. *See id.* The trial court acknowledged that the GWA Rules state that an employee has ten days "after receipt of the notice" to answer but emphasized that "service by mail is complete upon mailing." *Id.* at 4. The trial court determined that the "service by mail rule" controlled:

> In this case, service by mail is the specific method of delivery. This method was allowed under the circumstances as GWA had made multiple attempts to serve Taitano at his home to no avail. On this issue, the Court finds that "service upon mailing" is a more specific descriptor than "upon receipt," and is therefore the standard that should be applied. The legal definition of "receipt" is not provided in GWA's Personnel Rules and Regulations, and could be interpreted to encompass the meaning of service upon mailing. If Taitano had been reachable at his home, he would have received the Notice in hand immediately, without any mailing delay. However, because Taitano was unreachable, the Rules provide an alternative method of service, which specifies that service is complete upon mailing. It does not make sense for the law to recognize a difference between these methods.

*Id.* at 5. The trial court further stated that "the principle of the mailbox rule in Guam law is clear. There is a rebuttable presumption in the law that properly mailing a document is sufficient for service and the law assumes that document was timely received by the addressee, barring evidence to the contrary." *Id.* (citing *Melwani v. Arnold*, 2010 Guam 7 ¶ 20). The trial court determined that "Taitano's claims that he did not receive the Notice until May 13 are insufficient to rebut the presumption that the Notice was timely received." *Id.* Despite finding that Taitano failed to rebut

the presumption, the court confusingly stated that, under the deferential standard of review for factual issues, it did not "dispute any of the questions of fact asserted by the parties prior to the petition for judicial review, and particularly accepts the fact that Taitano did not receive the Notice until May 13, giving him only a few days to reply to the Notice." *Id.* at 6. Ultimately, the trial court's decision was rooted in policy considerations:

> [W]hen mail is the method of service, the only way to have a concrete legal standard is to use the date of mailing as a baseline. While it is true that mail can be delayed and not everyone checks their mail every day, allowing a party to push back a legal deadline based on when they decided to check their mail is poor legal policy. Such a standard would allow legal deadlines to be controlled by parties rather than by the reviewing institution, and would place too high of a burden on reviewing institutions like the CSC to know when a deadline has passed.

*Id.* The court vacated the CSC's decision and remanded to the CSC for further proceedings. *Id.* at 7. Taitano timely appealed.

## II. JURISDICTION

[14] "Decisions of the Civil Service Commission are subject to judicial review." *Charfauros v. Civ. Serv. Comm'n (Guam Police Dep't)*, 2022 Guam 19 ¶ 15 (citing *Guam Police Dep't v. Guam Civ. Serv. Comm'n (Charfauros)*, 2020 Guam 12 ¶ 6; *Carlson v. Perez*, 2007 Guam 6 ¶ 65). "The vehicle for obtaining this review is a petition for judicial review filed in the Superior Court of Guam." *Id.* (quoting *Charfauros*, 2020 Guam 12 ¶ 6). We have jurisdiction over appeals from a final order of the Superior Court. 48 U.S.C.A. § 1424-1(a)(2) (Westlaw through Pub. L. 119-84 (2026)); 7 GCA §§ 3107, 3108(a) (2005).

[15] Before turning to the merits of Taitano's arguments, we must address his contention that GWA's petition for judicial review was untimely, depriving this court of jurisdiction.[5] *See*

---

[5] Although we are sympathetic to the CSC's request for clarification on a jurisdictional issue, *see* Appellee CSC's Br. at 7-10 (Apr. 30, 2025), we must decline to "address issues unnecessary to the resolution of the case before [us]," *Unpingco v. Derry*, 2021 Guam 1 ¶ 21 (quoting *Hemlani v. Hemlani*, 2015 Guam 16 ¶ 33).

Appellant's Br. at 10-11 (Mar. 31, 2025). If we conclude that jurisdiction never attached to the original underlying action, then the CSC's decision becomes final and binding over the parties. *See San Nicolas v. Birn*, 2022 Guam 8 ¶ 30; 4 GCA § 4406 (as amended by Guam Pub. L. 34-145:1 (Dec. 13, 2018)).

[16]    "[J]urisdictional issues are a threshold matter, to be addressed prior to a review on the merits." *Agana Beach Condo. Homeowners' Ass'n v. Mafnas*, 2013 Guam 9 ¶ 37 (citing *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007)). "[J]urisdiction is a question of law reviewed *de novo*." *Port Auth. of Guam v. Civ. Serv. Comm'n (Susuico)*, 2015 Guam 14 ¶ 11 (quoting *Guam Fed'n of Tchrs. v. Gov't of Guam*, 2013 Guam 14 ¶ 24).

[17]    The CSC's enabling legislation states that its decisions are "subject to judicial review." 4 GCA § 4406. But "because the statute is silent on the procedures for obtaining [judicial] review," this court imposed "a judicially-created limitations period requiring a CSC decision to be appealed within 30 days." *In re Dep't of Agric. v. Civ. Serv. Comm'n (Rojas)*, 2009 Guam 19 ¶ 13. "The CSC later adopted the 30-day rule through the rule-making process of the Administrative Adjudications Law." *Id.* ¶ 14. Under CSC Rules of Procedure for Adverse Action Appeals ("CSC AA Rules"), a party seeking judicial review of a CSC judgment must file appropriate pleadings with the Superior Court "within thirty (30) days after judgment is entered." CSC AA R. 11.7.8.

[18]    Applying the 30-day deadline to the CSC's February 2, 2023, written decision, the filing deadline for GWA's petition was March 7, 2023.[6] GWA submitted its Petition for Judicial Review on March 7, 2023, using the Superior Court's email filing. The Superior Court Clerk's office informed GWA that court documents received after 5:00 p.m. on a weekday will be reviewed and

---

[6] Taitano acknowledged at oral argument that he applied the incorrect computation of time in his brief, Digital Recording at 10:05:19–10:08:51 (Oral Arg., Aug. 11, 2025), as he did not take weekends and holidays into consideration and incorrectly claimed that "GWA submitted its Petition for Judicial Review 33 days later," *see* Appellant's Br. at 11 (Mar. 31, 2025).

processed the next business day. GWA paid the filing fee on March 8, 2023, after the petition was processed by the Superior Court Clerk's office. The Superior Court Clerk relied on this court's administrative order to determine the filing date. Supreme Court Administrative Order No. ADM22-007 states that "[a] document is not considered 'filed' until the filer receives a response from the Clerk's office stating the document has been filed," and "[a] document is not filed until the filing fee is paid." *Re: Relative to the Filing of Documents via Email in the Supreme Court of Guam and the Superior Court of Guam*, ADM22-007 at 4 (Admin. Order No. ADM22-007, Oct. 14, 2022) (emphasis omitted). The Superior Court Clerk ultimately stamped the filing date as March 8, 2023, meaning GWA's petition was stamped filed one day late.

[19]     Taitano argues that "jurisdiction never attached to the original underlying action, and the Superior Court was without the jurisdiction to confer the relief that it did to GWA." Appellant's Br. at 11. But this is incorrect, as "not all filing deadlines are 'jurisdictional.'" *People v. Pinaula*, 2023 Guam 2 ¶ 18. A time limit prescribed only in a court- or agency-made rule is not jurisdictional; it is a mandatory claim-processing rule subject to forfeiture or waiver if not properly raised. *See id.* ¶¶ 18-20; *Wilkins v. United States*, 598 U.S. 152, 158 (2023) (treating administrative filing deadline as claim-processing rule, observing "most time bars are nonjurisdictional"). We conclude that Taitano relies upon non-jurisdictional claim-processing rules that he has waived.

[20]     The 30-day time limit to file a petition for judicial review from a CSC decision was first created by this court and then adopted by CSC rule; it was not created by the Legislature and is therefore a claim-processing rule. Our administrative order stating that "[a] document is not considered filed until the filing fee is paid" is also a claim-processing rule. ADM22-007 at 4 (emphasis omitted). Finally, the Superior Court's unwritten policy that an email filing after 5:00

p.m. is considered filed the next business day is also a non-jurisdictional claim-processing rule.[7] Taitano had the opportunity to challenge the timeliness of the filing but instead waived any objection. *See* RA, tab 14 at 1-2 (Statement Non-opposition to GWA's Mot. Accept, Apr. 20, 2023). The Superior Court granted GWA's motion from the bench. *See* RA, tab 24 at 1 (Min. Entry, Apr. 23, 2024). Because the relevant rules are non-jurisdictional claim-processing rules, the Superior Court properly exercised jurisdiction over the petition for judicial review, and we therefore have jurisdiction over this appeal.

### III.  STANDARD OF REVIEW

[21]    Generally, "[w]e examine whether the trial court properly determined that the CSC's decision was in accordance with the law and supported by substantial evidence." *Charfauros*, 2022 Guam 19 ¶ 16 (quoting *Guam Waterworks Auth. v. Civ. Serv. Comm'n (Mesngon)*, 2014 Guam 35 ¶ 5). However, "under 4 GCA § 4402, and Appellate Division precedent, any action of the CSC requires the vote of four commissioners to be enforceable." *Limtiaco v. Guam Fire Dep't*, 2007 Guam 10 ¶ 65 (footnote omitted). This procedural quirk of the CSC is known as the "Rule of Four." *Id.* The Ninth Circuit has held that because "no findings can be issued from the

---

[7] GWA argued that neither Administrative Order No. ADM22-07 nor its predecessor ADM21-657 contains language that support such a policy. *See* RA, tab 7 at 7 (Mot. Accept Filing as Timely, Mar. 24, 2023). Administrative Order No. ADM21-657 states that "Judiciary of Guam facilities are open to the general public for all court business between the hours of 8:00 a.m. to 5:00 p.m., Monday to Friday." *Re: Seventeenth Updated Order Relative to Court Operations Under Exigent Circumstances Related to COVID-19 (Coronavirus)*, ADM21-657 at 2 (Admin. Order No. ADM21-657, July 30, 2021). That order also provides that the Superior Court Clerk's Office is open for in-person filing between 9:00 a.m. and 4:00 p.m. *Id.* at 3. Assuming Administrative Order No. ADM21-657 supports the Superior Court's policy that an email filing after 5:00 p.m. (or 4:00 p.m.) is filed the next day, *see* RA, tab 9 (Decl. Theresa G. Rojas, Mar. 24, 2023), Ex. A at 1-2 (Email between jsdesoto@guamwaterworks.org & efilecivil@guamcourts.org, Mar. 7, 2023); *id.*, Ex. D at 2 (Email between tgrojas@guamwaterworks.org & shermosilla@guamcourts.org, Mar. 10, 2023), it is a court-made rule subject to waiver or forfeiture if the party does not properly raise it. *See People v. Pinaula*, 2023 Guam 2 ¶ 19. But this language merely defines public access hours; it does not logically support the conclusion that electronic filings submitted after 5:00 p.m. but before midnight are deemed filed the next day. Moreover, interpreting Administrative Order No. ADM21-657 to mean that filings after 5:00 p.m. are deemed filed the next day would conflict with Guam Rule of Civil Procedure 77(a), which provides: "The courts shall be deemed always open for the purpose of filing any pleading or other proper paper, of issuing and returning mesne and final process, and of making and directing all interlocutory motions, orders, and rules." Guam R. Civ. P. 77(a). However, we need not reach any potential conflict between Superior Court policy and the Rules of Civil Procedure because Taitano waived any objection to a late filing.

Commission without four concurring votes, the court is therefore precluded from reviewing findings whenever an adverse action appeal is disposed of by the Rule of Fours." *Guerrero*, 1992 WL 153005, at *2. We see no reason to depart from this approach. Thus, when a case is disposed of by the Rule of Four, courts are limited to a *de novo* review of "whether the agency decision 'was in accordance with law.'" *See Fagan*, 2006 Guam 11 ¶ 12 (citing 5 GCA § 9240 (2005); 22 GCA § 9122 (2005)).

## IV.  ANALYSIS

**A.  It Is Unreasonable to Presume a Letter Is Received the Day It Is Mailed**

[22]     GWA suggests that there is only one iteration of the "mailbox rule" and that it governs the NPAA here. *See* Appellee GWA's Br. at 4, 16-17 (May 14, 2025). However, a cursory review reveals that this phrase is applied to many different concepts. For example, there is a rule for court filings of inmates sent by prison mail system. *E.g.*, *Houston v. Lack*, 487 U.S. 266, 275 (1988). There is a general rule for filing court documents by mail. *See, e.g.*, *Horton v. Ill. Mun. Ret. Fund*, 2020 IL App (1st) 200022-U, ¶ 20. There is a rule for acceptance of a contract by correspondence. 2 Williston on Contracts § 6:33 (4th ed. (May 2025 Update)). There is a rule for the timely mailing of tax documents to the IRS. 35 Am. Jur. 2d *Federal Tax Enforcement* § 10 (Feb. 2026 Update). There is a rule governing the mailing of substituted service in a civil lawsuit. 72 C.J.S. *Process* § 78 (Mar. 2026 Update). And there is a rebuttable presumption that a letter properly addressed, stamped, and mailed reaches its destination at the usual time. *See Melwani*, 2010 Guam 7 ¶ 20; *Hagner v. United States*, 285 U.S. 427, 430 (1932).

[23]     GWA incorrectly conflates several of these concepts. The chapter of the GWA Rules governing disciplinary actions for certified, technical, and professional employees states that "[s]ervice by mail is complete upon mailing." GWA Pers. R. & Regs. 11.200C, § 17.0. GWA

claims that this provision "replicates the language of the mailbox rule." Appellee GWA's Br. at 20. But GWA's arguments conflate substituted service by mail with the presumption of mail delivery. Further compounding this confusion, GWA primarily relies on a case dealing with the timely mailing of an extension to file a tax return. *See id.* at 20-21, 24 (citing *Lewis v. United States*, 144 F.3d 1220, 1222 (9th Cir. 1998)).[8] The presumption of mail delivery should not be conflated with other distinct concepts like the mailing of substituted service.

[24] This court has recognized that "proper mailing of a document raises a rebuttable presumption that the document was timely received by the addressee" and that without more, a mere claim of non-receipt is "insufficient to rebut the presumption." *Melwani*, 2010 Guam 7 ¶ 20. Sometimes referred to as the "common law mailbox rule" or the "mail delivery rule" to distinguish it from related concepts, *see, e.g.*, *Schikore v. BankAmerica Suppl. Ret. Plan*, 269 F.3d 956, 961-63 (9th Cir. 2001); *Lee v. State*, 182 P.3d 1169, 1171 (Ariz. 2008), this rule "is commonly used for the numerous types of documents sent to individuals by federal, state, and local governmental entities," 200 Am. Jur. *Proof of Facts* 3d 263 § 10 (July 2025 Update). Application of this rule commonly arises in cases dealing with "notices of garnishment, right-to-sue letters from the Equal Employment Opportunities Commission, unemployment benefits administrative hearings, administrative hearings regarding denial of medical benefits, notification of suspension of driver's license, notification of action by family services agencies, and notification of action by public welfare agencies." *Id.* (footnotes omitted). "Where the date of delivery is at issue and not

---

[8] The decision in *Lewis v. United States*, 144 F.3d 1220 (9th Cir. 1998), is wholly inapposite because it was decided under a provision of the Internal Revenue Code which "specified that the postmark 'shall be deemed to be the date of delivery [to the IRS].'" *Lewis*, 144 F.3d at 1223 (quoting 26 U.S.C. § 7502(a)(1)); *see also id.* at 1225 (White, J., dissenting) ("The taxpayers in this case clearly understand that reliance on the common law mailbox rule provides no help to them (indeed, as just noted, they lose if it provides the governing law) . . . ."). The other cases upon which GWA relies, *see* Appellee GWA's Br. at 20-30 (citing *In re Bucknum*, 951 F.2d 204 (9th Cir. 1991) (per curiam); *Melwani v. Arnold*, 2010 Guam 7; *Palo Alto Town & Country Vill., Inc. v. BBTC Co.*, 521 P.2d 1097 (Cal. 1974) (in bank)), are straightforward applications of the presumption of mail delivery which do not support the proposition that "service" is equivalent to "receipt."

supported by specific proof (such as a dated receipt), cases commonly adopt three days for a letter sent by first class mail." *Id.* (citing *Payan v. Aramark Mgmt. Servs. Ltd. P'ship*, 495 F.3d 1119, 1124-26 (9th Cir. 2007)).

[25]     However, the presumption of mail delivery is usually inapplicable when a letter is sent via certified mail with return receipt requested. This court has explained that "Certified Mail through the U.S. Postal Service provides written proof of mailing, and Return Receipt service provides written proof of delivery." *Pineda v. Pineda*, 2005 Guam 10 ¶ 15. Some courts have held that the presumption does not apply to certified mail at all. *E.g.*, *Card v. City of Cleveland*, 2017-Ohio-7173, 95 N.E.3d 1066, at ¶ 31; *Simms v. Zucco*, 280 A.3d 1226, 1236 (Conn. App. Ct. 2022); *Schor v. FMS Fin. Corp.*, 814 A.2d 1108, 1114 (N.J. Super. Ct. App. Div. 2002). But even courts that apply the presumption to certified mail recognize that the presumption is rebuttable, and "[a] return receipt is prima facie evidence of the delivery of the letter on the date shown on the return receipt." *See M.D. & Assocs., Inc. v. Sears, Roebuck & Co.*, 749 S.W.2d 454, 456 (Mo. Ct. App. 1988); *see also Hayes v. N.J. Dep't of Hum. Servs.*, 108 F.4th 219, 222 (3d Cir. 2024) ("A plaintiff can rebut the three-day presumption by presenting evidence of delayed receipt."); *Woodies Holdings, LLC v. United States*, 120 Fed. Cl. 113, 118 (2015) ("Several Courts of Appeal also have held that the lack of a return receipt when a letter was sent certified with return receipt requested rebuts the presumption of delivery."); *State v. Int'l Fid. Ins. Co.*, 694 N.Y.S.2d 896, 900 (Sup. Ct. 1999) ("The very reason for transmitting mail by certified mail is to avoid reliance on the presumption of receipt."), *aff'd as modified*, 708 N.Y.S.2d 504 (App. Div. 2000).

[26]     Certified mail may actually take longer to deliver than ordinary mail. *E.g.*, *Iacoponelli v. Curro*, 260 So. 2d 166, 169 (La. Ct. App. 1972) ("[D]elivery and receipt of certified mail may, and does in many instances, require a longer period of time than does ordinary mail because of the

requirement that someone must be present to receipt [sic] for delivery of certified mail."). The government cannot send notice to an employee by certified mail with return receipt requested and then presume the employee received notice automatically upon mailing. *Cf. Jones v. Flowers*, 547 U.S. 220, 235 (2006) ("[T]he use of certified mail might make actual notice less likely in some cases—the letter cannot be left like regular mail to be examined at the end of the day, and it can only be retrieved from the post office for a specified period of time."). We note that GWA Rules require a NPAA or NFAA to be sent by certified mail but do not mandate return receipt. GWA Pers. R. & Regs. 11.200C, § 16.2. This means GWA may either send notice by certified mail without a return receipt and rely on the presumption of delivery, or send notice by certified mail return receipt requested and rely on the date of the return receipt. But even where no return receipt is requested, "[c]ertified mail provides the sender with a mailing receipt and tracking number to verify delivery . . . ." *Smith v. Munford Police Dep't*, No. 2:18-cv-02435-TLP-cgc, 2019 WL 2476752, at *1 n.1 (W.D. Tenn. June 12, 2019). In a rare case, a party may be able to rely on the presumption of mail delivery despite sending notice via certified mail return receipt requested— such as where neither a return receipt nor unclaimed mail is returned to the sender and the tracking number is inconclusive. *Cf. Jones*, 547 U.S. at 225 (holding that where notice of tax sale, sent by certified mail, return receipt requested, was returned as unclaimed, "the State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so").

[27]      It is undisputed that the NPAA was sent to Taitano's P.O. Box via certified mail, return receipt requested. GWA did not produce the return receipts as part of the administrative record. Had it been able to do so, this would have been prima facie evidence of when Taitano received the NPAA. It appears that this may be one of the rare cases where the mail delivery rule applies to

certified mail return receipt requested because the sender neither received a return receipt nor was the mail returned to them as undelivered. But even assuming the presumption of mail delivery could be relied on in this case, GWA fired Taitano less than 10 days after delivery would be presumed.

[28]     Taitano was fired on May 18. The GWA Rules provide that an employee has ten days to answer "after receipt of the notice," and the General Manager may not proceed with the adverse action until the notice period has expired. *See* GWA Pers. R. & Regs. 11.200C, § 12.0. Thus, GWA's termination would be valid only if Taitano "received" the NPAA on or before May 7. But the NPAA was mailed after 1:30 p.m. on May 6. It is unreasonable to presume all letters mailed on Thursday afternoon will be delivered by Friday. *See, e.g.*, *Emery Worldwide Airlines, Inc. v. United States*, 264 F.3d 1071, 1074 n.1 (Fed. Cir. 2001) ("Express mail is delivered overnight to most cities and is guaranteed within two days. Priority mail is delivered in two to three days to most cities, but has no guarantee. First class mail is intended to be delivered within two to four days to almost every city."); *cf. Tucker v. United States*, 724 F. App'x 754, 758 (11th Cir. 2018) (per curiam) ("[I]t is not reasonable to expect an ordinary letter deposited in the U.S. Mail to be delivered that same day."). GWA points to no authority where a court has presumed that mail is delivered the day after it is sent—let alone on the same day (despite claiming receipt is presumed instantaneously upon mailing).

[29]     The Ninth Circuit applies a rebuttable presumption that mail reaches its recipient three days after the date of mailing. *E.g.*, *Payan*, 495 F.3d at 1126. Our court rules reflect a presumption of three days as well. *See* Guam R. App. P. 11(c) ("When a party is required or permitted to act within a prescribed period after a paper is served on that party, three (3) calendar days are added to the prescribed period unless the paper is delivered on the date of service stated in the proof of

service."); Guam R. Civ. P. 6(d) (providing three additional days after service by mail). Other courts sometimes apply presumptions of five or seven days depending on the circumstances. *Payan*, 495 F.3d at 1125 (collecting cases). The Guam Code Annotated presumes delivery of service to a foreign corporation after five days. 18 GCA § 7113 (as amended by P.L. 29-002:V:I:59 (May 18, 2007)).

[30] Even if we applied the quickest presumption of mail delivery to GWA's claim, it would still add three days to the date of mailing. At best, the correct formulation of the "mailbox rule" GWA attempts to invoke would be a rebuttable presumption the NPAA was delivered three days after mailing on May 6, 2021. Even if we assumed the presumed delivery date applied (rather than the undisputed date of receipt), that would still mean GWA failed to give Taitano ten days to answer. The NPAA was mailed on Thursday, May 6, 2021. Three days later was Sunday, May 9. As mail is not delivered on Sundays, the presumed date of delivery would be May 10. Thus, based on the presumed date of delivery, GWA fired Taitano after giving him only eight days to answer. Under the undisputed date of receipt of May 13, he was given only five days to answer. We need not decide the precise contours of the presumption of mail delivery in Guam because under either scenario—date of actual receipt or presumed receipt—Taitano's termination would be invalid.[9]

---

[9] We emphasize that the presumption of mail delivery is rebuttable. GWA's reading of the Personnel Rules and Regulations governing disciplinary actions—equating substitute service by mail with the presumption of mail delivery—would make the latter presumption conclusive, which is another reason we reject GWA's proposed interpretation. Additionally, whether a party has rebutted a presumption is a factual issue. *In re Application of the People*, 2024 Guam 16 ¶ 20; *see also Lee v. State*, 182 P.3d 1169, 1171 (Ariz. 2008) ("The denial of receipt creates an issue of fact that the factfinder must resolve to determine if delivery actually occurred."). To the extent the trial court found Taitano failed to rebut a presumption, *see* RA, tab 33 at 5 (Dec. & Order), reversing the CSC on this ground was error because this was a factual determination upon which judicial review was precluded, *see Guam Power Auth. v. Civ. Serv. Comm'n (Guerrero)*, 967 F.2d 586, 1992 WL 153005, at *2 (9th Cir. 1992) (unpublished table decision) (holding management precluded from obtaining judicial review of factual issues when CSC could not issue findings).

[31]     Because Taitano's termination would be invalid when calculated either from the date of receipt or presumed date of delivery, this leaves GWA to argue his time to answer began to run when service was completed.

## B. The Plain Language of the Rule Says the Employee Has Ten Days "After Receipt," Not "After Service"

[32]     The decision of the trial court was erroneous for several reasons. First, it ignored that the case was disposed of by the Rule of Four, precluding GWA from obtaining judicial review of any factual issue. But on a more fundamental level, the trial court's decision violated basic rules of construction because it ignored the plain language of the rule regarding an employee's answer, which provides: "An employee is entitled to seek reconsideration of the proposed adverse action by answering any charges within ten (10) days after receipt of the notice . . . ." GWA Pers. R. & Regs. 11.200C, § 12.0. Instead of adhering to the ordinary, unambiguous meaning of "receipt," the trial court invoked a canon of construction, creating an ambiguity where none existed.

[33]     "Whether we are interpreting a statute or a rule, 'the same canons of construction apply,' and our 'starting point' is 'the plain language of the rule.' A written provision is ambiguous when it is 'susceptible to two or more reasonable interpretations.'" *In re Guam Bar Ass'n*, 2024 Guam 5 ¶ 29 (per curiam) (quoting *Topasna v. Gov't of Guam*, 2021 Guam 23 ¶¶ 9-10). An administrative rule's failure to define a term does not necessarily render that term ambiguous. *E.g.*, *JBLU, Inc. v. United States*, 813 F.3d 1377, 1380 (Fed. Cir. 2016) ("The fact that a term is not defined by a regulation does not make it ambiguous . . . ."); *Goldstein v. S.E.C.*, 451 F.3d 873, 878 (D.C. Cir. 2006) ("The lack of a statutory definition of a word does not necessarily render the meaning of a word ambiguous, just as the presence of a definition does not necessarily make the meaning clear."); *cf. M Elec. Corp. v. Phil-Gets (Guam) Int'l Trading Corp.*, 2016 Guam 35 ¶ 75 ("'The fact that the parties fail to specifically define a term within the contract does not make the

term ambiguous.' 'Instead, common, undefined words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or some other meaning is clearly evidenced from the face or overall contents of the instrument.'" (citations omitted)); *Carlson v. Guam Tel. Auth.*, 2002 Guam 15 ¶ 34 ("Undefined terms in a statute are generally ascribed their common ordinary meaning."). "Where statutory language is plain, unambiguous and admits of only one interpretation, resorting to statutory interpretation is not necessary." *Topasna v. Superior Court (People)*, 1996 Guam 5 ¶ 9. A court should "not adopt a strained or absurd interpretation in order to create an ambiguity where none exists." *See Yasuda Fire & Marine Ins. Co. v. Heights Enters.*, 1998 Guam 5 ¶ 14 (quoting *Hollingsworth v. Com. Union Ins. Co.*, 256 Cal. Rptr. 357, 359 (Ct. App. 1989)).

[34]    The trial court stated that "[t]he legal definition of 'receipt' is not provided in GWA's Personnel Rules and Regulations, and could be interpreted to encompass the meaning of service upon mailing." RA, tab 33 at 5 (Dec. & Order). However, the lack of a definition does not render the term "receipt" ambiguous. *See Goldstein*, 451 F.3d at 878. Rather than look to the ordinary meaning of the term, the trial court went straight to the canons of construction. "Receipt" means "[t]he act of receiving something, esp. by taking physical possession," and 'receive' means "to come into possession of or get from some outside source." *Receive*, *Black's Law Dictionary* (12th ed. 2024); *Receipt*, *Black's Law Dictionary* (12th ed. 2024). One does not come into possession of a document instantaneously upon it being placed in the mail.

[35]    But even if it were reasonable to interpret "receipt" to mean "service upon mailing," this would not end the analysis. *See People v. Walliby*, 2024 Guam 13 ¶ 11 (holding interpretation of statute was reasonable, but statutory language was nonetheless ambiguous because this was not the only reasonable interpretation); *In re Est. of Leon Guerrero*, 2023 Guam 10 ¶ 46 (reversing

trial court's interpretation because, although it was "[o]*ne way* to harmonize" statutory scheme, it was not only way, rendering statutes ambiguous). A court cannot avoid ambiguity by selecting one interpretation of a rule and ignoring all other reasonable interpretations. *E.g.*, *Petersen v. Magna Corp.*, 773 N.W.2d 564, 575 (Mich. 2009) ("Allowing a judge to pick one meaning among several equally plausible meanings without using the rules of statutory construction is quite simply an exercise in speculation."). In other words, not only is it an error for a court to read ambiguity into a rule by ignoring its plain language, but that error is compounded when the court considers only a single interpretation of the purportedly ambiguous rule.

[36]     To the extent the trial court attempted to resolve the purported ambiguity in the rule—rather than adopting GWA's interpretation to the exclusion of all others—it seems to have relied on the principle that "a narrower, more specific provision of a statute takes precedence over a more general provision of the same statute." *In re Leon Guerrero*, 2021 Guam 6 ¶ 27 (per curiam) (quoting *Camacho v. Est. of Gumataotao*, 2010 Guam 1 ¶ 19); *see* RA, tab 33 at 5 (Dec. & Order) ("On this issue, the Court finds that 'service upon mailing' is a more specific descriptor than 'upon receipt,' and is therefore the standard that should be applied."). But this interpretation contravenes the principle that statutes should be read "to avoid 'absurd or impractical consequences, untenable distinctions, or unreasonable results.'" *In re D.S.*, 2023 Guam 13 ¶ 37 (quoting *Sumitomo Constr., Co. v. Gov't of Guam*, 2001 Guam 23 ¶ 17). Even setting aside the fact that the statute's language is plain and unambiguous, equating "receipt" with "service" is unreasonable. The two terms are distinct, each representing separate legal concepts that serve different purposes. Conflating them distorts their established meanings.

[37]     Although the trial court reasoned that "[i]t does not make sense for the law to recognize a difference between" personal service and service by mail, RA, tab 33 at 5 (Dec. & Order), the law

emphatically does. It not only distinguishes between personal service and service by mail, but also between the commencement of time periods based on *receipt* versus *service*.

[38]    GWA Rules state that "[s]ervice by mail is complete upon mailing." GWA Pers. R. & Regs. 11.200C, § 17.0. This familiar language mirrors the formulation found in the Federal Rules of Civil Procedure ("FRCP") since their inception. 4B *Wright & Miller's Federal Practice & Procedure: Civil* § 1171 (4th ed. (Apr. 2026 Update)). Yet, from the outset, the drafters of the Federal Rules recognized that mail is not instantaneous, even if service by mail is. *Id.* As explained by a leading treatise, since the FRCP were first promulgated, Rule 6 has provided three additional days "whenever a party has the right or is required to act within a prescribed period after the service of a notice or other paper, and the paper is served by mail." *Id.* This understanding—that service by mail entails delayed receipt—has always been embedded in the FRCP:

> Providing additional time when the triggering paper is served by mail is designed to address the fact that, under Rule 5, service is complete upon the mailing itself, not actual receipt. The additional three days provided to the party being served is thought to represent a reasonable transmission time, and a fair compromise between the harshness of measuring time strictly from the date of mailing and the indefiniteness of attempting to measure from the date of receipt, which in many cases would be unverifiable.

*Id.* (footnotes omitted).

[39]    Many states have incorporated similar provisions into their procedural rules. As discussed above, we have as well. Where a party's time to act is measured from the date of *service* by mail, states almost uniformly allow additional time to respond. *E.g.*, *Sellers v. Emp. Sec. Comm'n of Wyo.*, 760 P.2d 394, 397 (Wyo. 1988). The reasoning is straightforward: "to protect parties who are served notice by mail from suffering a systematic diminution of their time to respond through the application of" rules which state that service by mail is complete upon mailing. *Peete v. Am. Standard Graphic*, 885 F.2d 331, 331 (6th Cir. 1989) (quoting 4A *Wright & Miller's Federal*

*Practice & Procedure: Civil* § 1171). Other courts echo this concern. For example, the Third Circuit has observed that without enlargement of time granted by FRCP 6, "a party would be penalized by being allotted less time to complete [its] task merely because [an] adversary chose to use the mail." *Kessler Inst. for Rehab. v. N.L.R.B.*, 669 F.2d 138, 141 (3d Cir. 1982).

[40]     There is a lack of authority to support GWA's contention that when a rule states a time period begins upon "receipt," the period is nonetheless measured from the date of service. There is, however, a considerable volume of authority undermining that conclusion. *See, e.g.*, 4B Fed. Prac. & Proc. Civ. § 1171 (4th ed. (Apr. 2026 Update)) ("Courts have held that, when a statute provides for the commencement of the time period upon receipt, current Rule 6(d) functions only when the date of actual receipt is unknown or disputed, such as when there is a dispute among the parties over the date on which the plaintiff received a right-to-sue letter from the EEOC." (collecting cases)).

[41]     Several persuasive decisions support our conclusion that "receipt" actually means receipt—not service. As Wright and Miller observe, "receipt" of a right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC") provides several examples. Some circuits "have adopted the view that rather than wrestle with whether receipt includes constructive receipt, the dispute should instead be resolved by applying common understandings of receipt to the facts of individual cases." *See, e.g.*, *S.C. CVS Pharmacy, LLC v. KPP Hilton Head, LLC*, 890 S.E.2d 824, 826 (S.C. Ct. App. 2023) (citing *Bell v. Eagle Motor Lines, Inc.*, 693 F.2d 1086, 1087 (11th Cir. 1982) (per curiam)).

[42]     Cases in the public employment context also support our conclusion. The California Court of Appeal rejected the argument that service by mail on the final day of a one-year statutory deadline satisfied a statute requiring an agency "notify" a peace officer of proposed discipline

within that year. *Earl v. State Pers. Bd.*, 179 Cal. Rptr. 3d 899, 902 (Ct. App. 2014). The agency contended that, because service by mail is considered complete upon mailing, the notice was timely. *Id.* The court disagreed, holding that "certified mail *received after* the outer limit of the relevant time period was not sufficient notification." *Id.* at 907. California courts have rejected similar arguments in the context of notice to public school teachers. *See Hoschler v. Sacramento City Unified Sch. Dist.*, 57 Cal. Rptr. 3d 115, 119 (Ct. App. 2007) (finding notice of nonretention untimely because it was undisputed that it was received after deadline).

[43] A decision we find particularly persuasive is *Miller County Board of Education v. McIntosh*, 756 S.E.2d 641 (Ga. Ct. App. 2014), which dealt with the firing of a school superintendent under an employment contract that provided a response period. When interpreting that contract, the Georgia Court of Appeals rejected an interpretation which "assume[d] that the seven-day period for responding to the written statement of charges commenced with the mailing of the letter containing the charges." *Id.* at 645. The operative language in that provision was that the superintendent had seven days to respond after he was "given" a written statement of charges. *Id.* The Georgia court reasoned that if the superintendent "is deemed 'given' the charges upon their mailing by the Board, then he would be at the mercy of the vagaries of the mail as to the time (or no time at all) afforded him to formulate and file his contentions in response to such charges." *Id.* at 645-46. The court unequivocally rejected this interpretation: "any interpretation of the termination provision that possibly results in [the superintendent] being prevented from filing a timely response is patently absurd and will not be adopted by this Court." *Id.* at 646. Instead, the court concluded "that the requirement that [the superintendent] be 'given' a statement of written charges contemplates that he actually *receive* those charges, and the applicable time period for [the

superintendent] to 'file [a] written response' began to run at that time." *Id.* (third alteration in original).

**[44]** We agree with the *McIntosh* court. It would be unreasonable to subject employees to "the mercy of the vagaries of the mail as to the time (or no time at all) afforded" them to answer a notice of proposed adverse action. *See id.* at 645-46. This concern is particularly acute in Guam, where home delivery remains unavailable to many residents.

**[45]** The trial court's policy concerns were misplaced. The purpose of the merit system is to protect employees—not employers—and to ensure they are afforded due process. *See Perez v. Civ. Serv. Comm'n (Guam Dep't of Educ.)*, 2018 Guam 25 ¶ 26. There is no need to contort the text of the rules to establish a "concrete legal standard" for when the notice period begins to run. *See* RA, tab 33 at 6 (Dec. & Order) ("[T]he only way to have a concrete legal standard is to use the date of mailing as a baseline."). If notice is sent by certified mail return receipt requested, the period begins on the date of the return receipt. Under GWA Rules, if properly sent by certified mail without a return receipt, the presumption of delivery might be applicable. But that presumption could rebutted if the letter was returned undeliverable or the tracking information provided by USPS says otherwise. This case might present an exception to the general rule that the government must rely on the date of the return receipt, but the trial court's decision allows the exception to swallow the rule.

**[46]** The purpose of the ten-day notice period is not to give GWA or the CSC control over legal deadlines. *See* RA, tab 33 at 6 (Dec. & Order) ("Such a standard would allow legal deadlines to be controlled by parties rather than by the reviewing institution . . . ."). Nor is notice a mere procedural formality to be checked off before terminating an employee. The rule is designed to ensure that the employee receives a full and fair ten days to respond to a notice of potential adverse

action. *See Port Transp., Stevedore & Terminal Emps. v. Guam Civ. Serv. Comm'n (Port Auth. of Guam)*, 2018 Guam 18 ¶ 29 ("It is well-settled that where a government employee has a constitutionally protected interest in continued employment, any adverse action triggers due process protections, which include 'procedural guarantees . . . [of] notice and a hearing at a meaningful time, in a meaningful way.'" (alterations in original) (quoting *Superales v. Appeals Bd. of Jud. Council of Guam*, DCA No. 82-0192A, 1984 WL 55540, at *1 (D. Guam App. Div. Apr. 18, 1984))). Given the potentially severe consequences of failing to respond—including construing inaction as an admission—we reject any interpretation that permits an employee to be afforded less than ten calendar days to answer after receiving notice of proposed adverse action. *Cf. Mesngon v. Gov't of Guam*, 2003 Guam 3 ¶ 11 ("The NPAA clearly provided that [employee] had 'ten (10) calendar days to answer the charges contained in the written notice of the proposed action.'").

[47]     The trial court reasoned that this interpretation "would place too high of a burden on reviewing institutions like the CSC to know when a deadline has passed." RA, tab 33 at 6 (Dec. & Order). However, this overlooks the concrete deadlines that are provided by requesting a return receipt, in addition to the tracking number provided by USPS that can be relied on in those rare cases where neither the letter nor the return receipt is returned to the sender. Notwithstanding whatever minimal burden is placed on management by the plain language of the GWA Rules, administrative convenience cannot override due process. *See, e.g.*, *State ex rel. Ormet Corp. v. Indus. Comm'n of Ohio*, 561 N.E.2d 920, 925 (Ohio 1990) (per curiam) ("A practice which violates due process cannot be excused because of mere administrative inconvenience."). Placing a letter in the mail does not provide an employee with notice of its contents—"[o]nly receipt can do that." *See In re Levens*, 563 F.2d 1223, 1225 (5th Cir. 1977); *see also United States v. Ayer*, 857 F.2d

881, 884 (1st Cir. 1988) ("[U]ntil the defendants receive some formal notice of the institution of the action, they are not assured a meaningful opportunity to discover, marshal[], and preserve evidence, that is, to prepare a defense."). Receipt may be presumed after a reasonable amount of time, but it is not automatic after mailing.

[48]　Rules governing classified employees must be interpreted liberally to protect the due process rights of employees, *see Blas v. Guam Customs & Quarantine Agency*, 2000 Guam 12 ¶ 24, including consideration of basic fairness, *see Guam Election Comm'n v. Responsible Choices for all Adults Coal.*, 2007 Guam 20 ¶ 86 ("Due process centrally concerns the fundamental fairness of government activity." (quoting *Quill Corp. v. North Dakota*, 504 U.S. 298, 312 (1992), *overruled on other grounds by*, *South Dakota v. Wayfair, Inc.*, 585 U.S. 162 (2018))). The trial court, however, justified its decision by stating: "The rule that service by mail is complete upon mailing can be easily found in the GWA Rules and Regulations, which Taitano, as a long-time employee of GWA, should have been familiar with." RA, tab 33 at 6 (Dec. & Order). Not only does this reasoning unwisely rely on presumed familiarity with internal agency rules, it also overlooks the express language in the forms GWA sent to Taitano. Both forms prominently stated in bold font: "Employee must answer orally or in writing within ten (10) calendar days after receipt of this notice." RA, tab 27 (Excerpts Admin. R.), Ex. 1 at 1 (Notice Proposed Adverse Action); *id.*, Ex. 2 at 1 (Notice Proposed Suspension) (emphasis omitted). The second form provided Taitano "NOTICE OF PROPOSED AND IMMEDIATE SUSPENSION DURING *NOTICE PERIOD*" for a period of twenty working days. *Id.*, Ex. 2 at 1 (Notice Proposed Suspension) (emphasis added). It is unreasonable to expect an employee to cross-reference GWA's internal rules—or to anticipate the trial court's novel interpretation of "receipt" to mean "service"—when

GWA's own forms told him, in unambiguous terms, that he had ten days after receipt to respond, and that the "notice period" during which he was suspended would last twenty working days.

[49]    Taitano was informed he had ten days to respond after he received the NPAA. GWA Rules likewise provide that an employee has ten days to respond *after receipt*. Yet GWA failed to afford Taitano ten days after receipt before terminating his employment. We cannot condone such unfair conduct.

[50]    GWA claims that "[a] receipt rule would allow all the negative consequences that the mailbox rule seeks to prevent." Appellee GWA's Br. at 16. But we cannot disregard the text of the rule, *see People v. Taisacan*, 2023 Guam 19 ¶ 22, nor can we "depriv[e] words of all meaning simply in order to reach a desired legal result," *see Ungacta v. Superior Court (People)*, 2013 Guam 29 ¶ 18 n.7 (per curiam) (quoting *United States v. Hickey*, 580 F.3d 922, 932-33 (9th Cir. 2009) (Reinhardt, J., specially concurring)). We cannot read "received" as actually meaning "mailed" or "served." Such a reading would be contrary to the plain language of the GWA Rules. It would also be contrary to the public policy reasons for having the procedural requirement at all: notice and opportunity to respond for the employee. We have previously looked with disfavor upon construing language such that "the due process of the personnel laws would disappear," allowing an employee to "be terminated at the whim and caprice of management." *Blas*, 2000 Guam 12 ¶ 24. GWA's reading of its rules "would lead to absurd and illogical results and would be in contravention of the primary purpose of the civil service laws which is to provide due process protection to members of the classified service of the government of Guam." *Id.*

[51]    GWA employees have the right to ten days after receiving a notice of proposed adverse action to respond, and GWA may not take adverse action until that period has elapsed. When

GWA affords an employee less than ten days to answer before termination, it violates its own rules.  The judgment of the trial court is reversed.

## V.  CONCLUSION

**[52]**    The trial court properly exercised jurisdiction over GWA's petition for judicial review. However, the plain language of the GWA Rules provides an employee ten days to answer "after *receipt* of the notice" and prohibits adverse action until that period has expired.  "Receipt" does not mean "mailing" or "service."  Any interpretation that deprives employees of a full opportunity to respond would produce untenable results and will not be adopted by this court.

**[53]**    GWA terminated Taitano on May 18.  Whether Taitano's time to answer is calculated from the undisputed date he received the NPAA, or when it would be presumed to be delivered under the "mailbox rule," he was not given a full ten days to answer.  The merit system's primary purpose is to safeguard employees' due process rights.  GWA's interpretation of its rule is illogical and unjust, and in this case, resulted in a denial of those protections.  We **REVERSE**, **VACATE** the judgment, and reinstate the CSC's decision vacating the termination.

|  |  |
|---|---|
| /s/ | /s/ |
| KATHERINE A. MARAMAN | JOHN A. MANGLONA |
| Associate Justice | Justice *Pro Tempore* |

/s/
F. PHILIP CARBULLIDO
Presiding Justice